By the Court.‡ Daniels, J.
The object of "the *15 action was to obtain the determination of the court that certain real estate described in the complaint was the property of the plaintiff, although title to it stood in the names of different defendants in the action, and to obtain an accounting of money delivered from time to time to the defendant, Hannah W. Higgins, in trust.for the plaintiff.
She was his wife, and for that reason it has been urged that such an action could not be maintained by him against her. But as it was in equity to assert and maintain rights cognizable only under equitable principles, it could be prosecuted and maintained by him, although it depended upon obligations incurred to him by his wife. At law he would be without a remedy because of his inability to maintain an action against his wife, but it is one of the fundamental principles of courts of equity to extend their jurisdiction and powers of relief to cases in which the party has no legal remedy, or where that may be inadequate, and a right to substantial redress appears to be supported by the circumstances of the case. And within this principle it has been held that an action for equitable relief may be maintained by a husband against his wife (2 Story's Equity Jur. 12 ed. § 1379 ; Livingston v. Livingston, 2 Johns. Ch. 539 ; Cannel v. Buckle, 2 P. Wms. 243-4; Gardner v. Gardner, 22 Wend. 525 ; Story's Eq. Pl. 7 ed. § 62).
As to the real estate to which the defendant, Han-W. Higgins took title, and which is situated in Pelham, the determination of the court was in the defendants’ favor, and as the plaintiff has not appealed, that part of the case will not require consideration in the decision of the appeal. But as to certain premises situated upon One Hundred and Eighteenth street, and One Hundred and Twenty-seventh street, in the city of New York, the plaintiff was held entitled to maintain the action. This determination proceeded *16 upon the ground that his wife had taken title to the property by paying for it with his money, when it had been agreed and understood between them, that she should take the title in his name. And so far as these allegations were, in fact, maintained by the proof, the judgment was formally right, for if he did place the money in her hands to purchase the property for him and in his name, and she took the title to it herself without his authority or consent, then a trust resulted in his favor, which he was entitled to enforce by securing such a conveyance as would carry out his purpose and design in placing the money in her hands (Reitz v. Reitz, 80 N. Y. 538; Shuttleworth v. Winter, 55 N. Y. 625).
The evidence upon the trial was mainly given by the plaintiff and his wife. He was a book-keeper, and for a time cashier, in the employment of Alexander T. Stewart & Co. He was not a person of either dissolute or expensive habits, and during the twenty-five, years and four months lie was in the employment of the firm, he received, including a legacy of ten thousand dollars left him for his meritorious conduct by the will of Alexander T. Stewart, upwards of ninety-six thousand dollars.
And his testimony was to the effect that, before the One Hundred and Twenty-seventh street property was purchased, he had saved out of his salary ten thousand dollars, which was placed in the hands of his wife to iiay the purchase price for that property.
And, while she denies having received this entire amount, she still concedes that he did stipply her with the sum of six thousand dollars, which was paid to the grantor as a part of the purchase price of the property. And her additional statement is, that she" made up the difference required to raise the sum of $6,250, and took the deed in the name of herself and the plaintiff jointly. And that,- she stated, was the *17 understanding between herself and the plaintiff. But so far as their evidence is in conflict upon this subject, the probabilities are with the plaintiff, for their disagreement had been so constant, and her conduct towards him so unfeeling and forbidding as to render it improbable that he would have consented to have given to her such an advantage in the purchase of this property. She was married to him first in 1853, and their marriage was early followed with such dissensions and disagreements as to practically result in their separation. In 1857 a preceding husband made his appearance, and she, afterwards, on the 5th of September of that year, succeeded in obtaining a divorce from him, and on the 15th of the same month inter-marrying again with the plaintiff. This second marriage was stated by him to have been wholly brought about by her control over him, and within a very few days afterwards, their dissensions, disagreements and bickerings were again renewed. This continued until November, 1807, when an agreement for their separation was made and executed, and after that, they lived separate for most of the time to the day of the commencement of this suit.
It is not probable, in this state of their marital relations, that he would have consented to place the title to valuable property in her hands, acquired by means of funds supplied by himself. And that was the view which was adopted by the learned justice before whom the trial took place, after he had the opportunity of both observing and hearing the testimony of these parties. Certainly, no such preponderance can be claimed in her favor, as would justify the ' least dissent from the conclusion adopted on this subject at the trial.
But it must be now held, as it was then, that the 'evidence was sufficient to sustain the allegation, that ilhe property on One Hundred and Twenty-seventh *18 street had been purchased with the plaintiff’s money, : and his wife had taken the title to it in their joint names, when it had been previously understood and agreed that it was to be taken in his name alone, and these facts under the statute created a resulting trust in his favor.*
*19 This action was not commenced until January 19, 1881, more than six years from the time the deed was taken for this property, and by the answer this lapse of time has been relied upon as sufficient to defeat the plaintiff’s right of action under the statutes of limitation. But this was not an action particularly enumerated, either in the former or the present Code, but it was an action for relief, as that term had been used in the preceding statutes, as well as in these Codes, and for that reason it could be commenced within ten years after the cause of action had accrued (Code Pro. § 97; Code Civ. Pro. § 388). This objection was properly held, therefore, at the trial to be untenable.
On December 26,1874, the plaintiff and his wife joined in a deed of this property to Charles H. Hutton, who on the 29th of the same month executed and delivered a deed of the same property to Hannah W. Higgins, the plaintiff’s wife. No actual consideration passed between the parties to these conveyances. The grantee in the first was the grandson of the grantee in the second of these deeds. But inasmuch as the plaintiff joined in the first deed, that fact has been-relied upon as sufficient to deprive him of the right to this property. But at that time the plaintiff, according to his own testimony and the probability arising upon the testimony of the medical experts, had become very much broken down in his health. He had no particular disease, but his nervous system and vital power appeared to be greatly on the wrane, and he testified as a matter of fact that he had become feeble- *20 minded, and his wife had acquired that 'degree of power and authority over him, as to render him incapable of resisting or refusing compliance with her dictations and directions. At the time when the property was purchased, he stated that he “was not able to exercise full deliberate judgment with regard to the business out of my routine employment; I was perfectly incapable outside of my own employment to transact any business.” And there is no reliable evidence whatever in the case conflicting with the truth of this statement and description of the plaintiff’s business. But, on the contrary, the facts and circumstances as they appear to have transpired, confirm the conviction that this description of himself was truthful.
Before he joined her in the deed of this property he states that: “Mrs. Higgins at the time the property was conveyed to defendant, Charles H. Hutton, told me it was for my benefit, especially, the thing was done, and that she had made a will for the house and furniture in my favor, as an off-set to secure me the property. She induced me by that means to convey it to Charles H. Hutton.” That was the reason. And because he was induced in this manner to join in the conveyance of the property, it has been insisted that he deprived himself of the right to follow and reclaim it against her.
But in view of his greatly impaired mental condition, this consequence cannot be attributed to what has been shown to have transpired. For the result was probably produced by reason of the circumstance that he had become so completely subjugated to the dicta-. tion of her will as to be incapable of refusing to comply with her suggestion on request. And in that condition, although he joined in the conveyance, it could not legally have the effect claimed for it, because of the controlling influence exercised over him by her in the transaction.
*21 She also at the time sustained the relation of trustee for him to this property, and as the object of the deed to Hutton was simply to vest her with the complete title to the property, and nothing whatever was paid to her husband for it, she was not in a condition to deal with him in that manner. For the law will not permit a trustee to acquire the title of the beneficiary in the estate by simply taking a deed from him without the payment of any adequate consideration. This principle has become so well settled as to render a particular reference to the authorities establishing it unnecessary (1 Perry on Trusts, 2 ed. § 195).
After she acquired title to this property she obtained money from the plaintiff to pay on a mortgage which was upon it at the time when the original purchase was made, and on August 26, 1880, she herself mortgaged it to secure the sum of seven thousand dollars, and that mortgage appears to be a subsisting lien upon the place. If, in fact, anything was paid by her, this circumstance was sufficient to more than reimburse her for all her payments.
As to this property, therefore, the conclusion of the learned judge presiding at the trial was well supported, and the defendant, Hannah W. Higgins, was also equitably bound-to account for its rents and profits, as that has been directed by tbe judgment. And if no further legal obstacle stood in the way, there would be no difficulty in sustaining the plaintiff’s title and this portion of the judgment.
But, on the trial, he testified that after the period was reached, where, in consequence of his broken-down health, he was obliged to abandon his employment, and she had obtained all his earnings from him not actually expended in his and her own support, and declined to tolerate him about her residence, that she advised him to take poison. His testimony is: “ She told me that ten cents’ worth of laudanum would pub *22 me but of the way very simply; she said I would die easy; she said, ‘ you will die, and that is the end of it—no heaven or hell; ’ she never, believed in a hereafter ; she told me so hundreds of times.”
It is probably needless to add, if these were, in fact, her views, that the circumstances of her entertaining them would materially reduce the confidence which
• otherwise would be given to her statements as a witness. By this and the other circumstances, a disposition would be induced to regard her evidence as unreliable, where it might be in conflict with that given by a witness not subject to such objection.
Her conduct towards her husband in probably obtaining his confinement in the Bellevue Hospital, and afterwards in the Middletown Insane Asylum, and sending him out of her reach in his disabled condition to the city of Chicago, and advising him, when there, to go into Canada, and the accusation made by her to one
• of the controlling employees of Stewart & Co., that he had been guilty of embezzling the funds of the firm while he was in its employment, when in truth there was no. foundation whatever for making it, placed herself as well as her testimony in a very unfavorable light, and where she could be relieved from' the effect of either of these circumstances, it was important for her that such relief should be permitted, and theneces•sity of obtaining it seemed to be felt by the counsel in the course of her examination as a witness. In that view she was asked whether she had stated toherhus- " band and also whether she did believe in a hereafter.
This was objected to as incompetent and immaterial, and the objection was sustained, and to that ruling the defendant excepted. This exception was well taken.
The evidence offered should have been received, for it would have tended to have released her from the . suspicion that in giving her evidence she was not sub *23 jected to the restraints which a conviction in a future state of existence would have supplied.
If was also admissible evidence for the reason' that she was entitled to controvert that which had been given by the plaintiff in the course of his own direct examination as a witness (Carpenter v. Ward, 30 N. Y. 243).
The case was tried with very great technical particularity, more so than would ordinarily be' deemed judicious in a close and critical controversy of this nature, and other exceptions were taken to the exclusion of evidence which could not be very plausibly sustained by any effort made in that direction.
On January 23, 1878, the defendant Hannah W. Higgins, took a conveyance of the property situated on One Hundred and Eighteenth street in the city of New York. That was in like manner claimed by the plaintiff, and held by the court to have been acquired by her with his money and for him.
This conclusion was adopted upon the general evidence of the plaintiff that his earnings were in great part obtained by and passed over to his wife, and that before this conveyance was taken he had received the legacy of ten thousand dollars provided for him in the will of Mr. Stewart. He testified that he gave her twenty-five hundred dollars of the legacy to pay on a thousand dollar mortgage on the One Hundred and Twenty-seventh street property, and that afterwards the residue of the legacy was delivered to her, together with the sum of $1,300 additional which he had saved.
That she intended to obtain this money from him was stated by her to the witness South wick, and although she denied the statement, his evidence may well be accepted as reliable, for the reason that he was not an interested party, and because of the important circumstances in the case tending to subject her statement to suspicion. The decided probability is that *24 she obtained this money, as the plaintiff stated he had passed it over to her, and that she undertook, as he himself testified, to hold it for his benefit.
But while it may be true that she had these and other moneys from the plaintiff to be safely kept and preserved for him, the evidence does not establish the fact that any part of it formed the consideration of the conveyance of the property on One Hundred and Eighteenth street. In this respect, the claim which was sustained as to his property differs from that upon which the right of the plaintiff to the property on One Hundred and Twenty-seventh street was dependent. -
As a general proposition, the law is well settled that where funds held subject to such a trust are invested in property, the property itself may be reached by the party entitled to the. benefit of the trust. But before that can be done, proof is required to be given establishing the fact affirmatively that the identical funds subjected to the trust have been invested in the property sought to be reached.
It may be conjectured, inasmuch as the defendant, Hannah W. Higgins, probably had no property not derived from her husband, that these funds may have been appropriated to the acquisition of this title, but a conjecture is not what the law requires for this purpose. It would be equally as reasonable to conclude that the property had been acquired with other funds, which in large amounts were from time to time given by the plaintiff to his wife to meet and provide for their living and other expenses. She may, as she claimed to have done, have saved money from these and other sources, and in that way have paid for this property.- Surely no such degree of certainty has been made to appear, that the moneys delivered to her by him to be held for his benefit went into this property, as would justify the conclusion that it was pur: *25 chased with such funds. In this respect, no sufficient foundation can be deduced from the evidence to sustain the conclusion that the land on One Hundred and Eighteenth street was bought with the plaintiff’s money, or made subject to any trust in his favor. For that reason, the portion of the judgment including this property, does not seem to have been sufficiently supported by proof. It did not appear, as a positive matter of fact, that any of the moneys delivered by the plaintiff to his wife to keep for him, still remained in her possession or under her control.
The conclusion that she may have had money of this description in her possession, was placed upon the circumstances showing the large amounts to have been received by her from her husband, and it may be, as a matter of fact, that she had not parted with or misappropriated these moneys at the time when the action was commenced, and if she had not, it was her duty to account for them, and pay them over to him, as that was directed by the judgment.
But so far as she may have violated the trusts subject to which she received the money, in making use of it herself there was no basis in the case for her liability to account (Shuttle v. Winter, 55 N. Y. 625). It is not pretended that any charge was made by her upon any separate property which she might have, securing the observance of this trust, and without that, her obligation could not be enforced against any separate estate acquired by her, for it was not one of those which, either under the general principles of the law, or the terms of the statute, could be enforced in that manner against her as a married Avoman. It is not, however, necessary for the disposition of this case to make a more extended examination of it.
If it were not for the exclusion of the evidence to which reference has been made, the plaintiffs right to the property on One Hundred and Twenty-seventh *26 street, and to an accounting of its rents and profits, and for the moneys in the hands of his wife, received by her from him ito be held in trust for him, could be very well sustained, for the evidence as to those matters sufficiently sustains the conclusions of the court.
But as the defendant was not permitted to give the proof in her behalf, which would probably have had some effect in the way of advancing her credit as a witness, the judgment in the case must be reversed, and a new trial ordered, but without costs to either party.

 Davis, P. J., and Brady and Daniels, JJ.

 The statute, 1 R. S. 728, §§ 51, 53 (3 Id. 7 ed. 3181) is as follows:
“Where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by'another, no rise or trust shall result in favor of the person by whom such payment shall be made ; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section.”
' “"The provisions of the preceding fifty-first section shall not extend to cases, where the alienee named in the conveyance shall have taken the same as an absolute conveyance, in his own name, without the consent or knowledge of the person paying the consideration, or where such alienee, in violation of some trust, shall have purchased the lands so conveyed, with moneys belonging to another person.”
The leading cases on this exception which saves the resulting trust in cases of conveyances taken without the knowledge or consent of the one whose money is used, are Siemon v. Schurch, 29 N. Y. 598; affirming Sieman v. Austin, 33 Barb. 9; Gilbert v. Gilbert, 2 Abb. Ct. of App. Dec. 256; Lounsbury v. Purdy, 18 N. Y. 515; affirming 16 Barb. 376; Foote v. Bryant, 47 N. Y. 544; Traphagen v. Burt, 46 N. Y. 30. And the same principle has also recently been applied in Buffalo, &c. R. R. Co. v. Lampson, 47 Barb. 533; Hurst v. Harper, 14 Hun, 280; Roulston v. Roulston, 64 N. Y. 652; Cipperly v. Cipperly, 4 Supm. Ct. (T. & C.) 342 ; Bitter v. Jones, 28 Hun, 492.
Tire statute is subject to another exception, now well established, in the case of property purchased with partnership assets, although perhaps this exception may be deemed to be included in the case of trust funds, which is expressly excepted by the last clause of the statute. See Fairchild v. Fairchild, 64 N. Y. 471; affirming 5 Hun, 407; Marvin v. Marvin, 53 N. Y. 607.
Most of these cases expressly recognize, and all are consistent with, the principle, that a court of equity will interpose to raise a resulting trust, uotwit listan ding the statute, wherd otherwise the Statute would be made the instrument of fraud.
It was held however, in Schmidt v. Schmidt, 48 Super. Ct. (J. & *19 S.) 520, that where lands are purchased in the name of a wife with joint funds of herself and husband, the latter subsequently advancing money to improve the same, no trust can be implied or enforced in favor of the husband without proof of some wrong or fraud committed by the wife. If there was an express contract that the husband should have some interest in the lands, it would be void under the statute of frauds.