(15 App. Div. 128.)

## WILLIAMS v. CHARLIER.

(Supreme Court, Appellate Division, Second Department.　March 19, 1897.)

1. TRUST—CONFLICTING DECLARATIONS—PRIORITY.

　　The first of two declarations of trust in favor of different persons, respecting the same property, will prevail, where the rights of the parties are equal.

2. SAME—IDENTIFYING TRUST FUND.

　　A finding that trust property, as to which the trustee made declarations in favor of both plaintiff and defendant, was purchased with plaintiff's money, is not sustained by proof that the trustee had equal amounts in his hands for investment for both parties; that he invested the amounts in separate mortgages, both of which were afterwards paid; that he then took a mortgage in his own name for the amount of one of the other mortgages, and advised both plaintiff and defendant that he had invested their money in it; that the last mortgage was dated May 16, 1892, and the mortgage in which defendant's money had previously been invested was paid June 11, 1892, there being no evidence as to when plaintiff's mortgage was paid, except that the interest was payable on May 15th and November 15th of each year.

Appeal from special term, New York county.

Transferred from First department.

Action by Mary Elizabeth Goddard Williams against Elisee Charlier. There was a judgment in favor of plaintiff, and defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Robert Thorne, for appellant.

Wilber McBride, for respondent.

HATCH, J. We have no power to right the wrong which has been done the plaintiff in this case by the systematic villainy of the person whom she chose as her trustee. We can only determine to whom belong the note and mortgage which are the subject of the action, from the evidence in the case, applying thereto the rules of law which govern the respective rights. The facts are not complicated, and we think, as between the parties, that both the legal and equitable right is clear. The plaintiff resides in London, England; the defendant in France. Both selected one Francis H. Weeks as a trusted agent to invest their money, and he betrayed the trust placed in him. It appears that Weeks was in the habit of investing the moneys which he held as trustee in mortgages, which he took in his own name, rendering statements to his cestui que trust. So far as is essential to a disposition of this action, it is disclosed by the record that the plaintiff had in the hands of Weeks $2,000, which he invested, or claimed to have invested, in a mortgage executed by one Parker, for the sum of $2,000. We may say here that the fact of any of these investments, in the respective mortgages, except the note and mortgage given by Sheehan, is supported only by the oral or written declaration of Weeks. None of the instruments are produced, and the parties only know of their existence by the representations made to each by Weeks. We as-

sume, however, that Weeks had a mortgage executed by Parker for $2,000, which was the property of the plaintiff. On October 20, 1892, Weeks informed the plaintiff that the Parker mortgage had been paid, and that he had reinvested the money in the Sheehan note and mortgage; and upon that date he mailed to her, at Boston, a statement of the securities then in his hands, belonging to the plaintiff, in which is set out the Sheehan note and mortgage for the sum of $2,000. This was the first that plaintiff knew of the change in investment. On November 4, 1892, the plaintiff saw Weeks, and spoke to him about the change, and Weeks then informed her that the Parker mortgage had been paid, and that he supposed she wished the money invested, and that it would be all right. The plaintiff sailed for Europe the next day, and has never seen Weeks since. He continued to pay her interest upon this sum, remitting the same to plaintiff while abroad until January 30, 1893. Except as we shall hereafter notice, this constitutes the evidence upon which plaintiff founds her claim to the Sheehan note and mortgage.

Defendant's claim is supported in this wise: He forwarded to Weeks a draft in August, 1890, for $1,437.60. This money belonged to defendant's sister, which she had authorized him to invest. In response he received a letter from Weeks, acknowledging receipt of the same, and stating that he had added to such sum several items of interest then due to the defendant from other instruments of his own in the hands of Weeks, sufficient to make the sum $2,000, and that he had invested that amount in a mortgage for $2,000, due June 11, 1892, interest 8 per cent., payable semiannually. On August 27, 1891, Weeks wrote the defendant, rendering him a statement of account, and inclosing a draft for "$80 for your sister's account," which he stated he had overlooked when due. On December 15, 1891, he remitted draft for 415 francs to the defendant, stating that it was "in payment of the interest of $80 due your sister." On May 11, 1892, Weeks wrote the defendant: "I have arranged to make a new loan for your sister of $2,000 in a mortgage to run three years at 8 per cent., and I presume the matter will be closed during the present week, in which case I will remit to you the interest up to the time when the new mortgage is taken, and will take over the existing $2,000 mortgage from that time to myself. I do that in order to avail myself of an opportunity to get a good mortgage. The details of this latter investment I will send you when I make the remittance." On June 23, 1892, Weeks wrote the defendant a letter containing a statement of account, in which appears an item: "Due you sister on hr mtg 80.00." In this letter he states: "Your sister's mortgage was paid in full, with interest to maturity, and I have reinvested the amount in mortgage made by William G. Sheehan for $2,000, at 8 per cent., dated May 16, 1892, due in three years, interest payable semiannually, May 16th and November 16th." On December 21, 1892, Weeks wrote the defendant a letter, remitting a draft, and stating: "Interest on Sheehan (for a/c your sister) $80." After Weeks had made his assignment, and absconded, there was found in his safe an envelope containing the Sheehan mortgage, and an assignment of the same, executed

by Weeks, to the defendant. This assignment bore date May 23, 1892, but was not acknowledged until April 26, 1893,—about the time Weeks absconded. Upon the envelope containing these papers was indorsed in Weeks' handwriting: "Mortgage. William G. Sheehan to Elisee Charlier 2000$. This is the property, really, of Mr. Charlier's sister, and he so understands, but for convenience was transferred to his name." This constitutes the substantial evidence upon which the defendant founds his claim. It is not disputed, indeed, the claim of the respective counsel is, that these declarations made by Weeks to each of the parties constitute an express declaration of trust, which had the effect of vesting an equitable title to the mortgage in the party to whom the declaration of trust was made; and such undoubtedly is the law. Martin v. Funk, 75 N. Y. 141. But here the declaration of trust is to each party, and, so far as the declaration itself is concerned, is, as to each party, absolute and unequivocal. So far, therefore, as form of words goes, each is equal. But this title, like all others where rights are equal, is subject to the rule that interests obtained prior in point of time become prior in point of right. The maxim, "Qui prior est tempore potior est jure," controls, and governs the rights of the parties. Underh. Trusts, p. 492. Measuring, therefore, the rights of these parties by this rule, we find that defendant's declaration of trust is prior in point of time. The plaintiff's money was in the Parker mortgage. The defendant's money was in the Nougier mortgage. On October 20, 1892, Weeks made his first declaration to the plaintiff, and she was then informed, for the first time, that her money was invested in the Sheehan mortgage. This was six months after the mortgage was executed. On May 11, 1892, Weeks notified the defendant that he proposed to invest his or his sister's money in a $2,000 mortgage. On June 23, 1892, he notified the defendant that his sister's mortgage had been paid in full, and that he had invested that money in the Sheehan mortgage, and described the same. Weeks' declaration of trust, therefore, was made to the defendant nearly four months before the plaintiff had any knowledge whatever upon the subject. It is therefore plain that, so far as the title to this mortgage is based upon the declaration of trust made by Weeks, the defendant is clearly prior in point of time, and therefore prior in point of right. If the equitable right of the parties was absolutely equal so far as the declaration of trust is concerned, still the defendant must succeed, for by virtue of the assignment he holds the legal title; and the rule is well settled that where the equities are equal the legal title will prevail.

If the declaration of trust to the plaintiff had been prior in point of time to that of the defendant, then the legal title would not avail to defeat it. Nor can such result be reached if it be established as a fact that the plaintiff's moneys actually formed the consideration for the mortgage. The latter is the ground upon which the court has placed its decision, and, if such be the fact, then plaintiff's title must prevail over both the declaration of trust to the defendant, as well as the assignment. We are, therefore, to see if this claim finds support in the evidence. The law requires that the party

asserting such fact is bound to establish the same. Higgins v. Higgins, 14 Abb. N. C. 13; Ferris v. Van Vechten, 73 N. Y. 113. The court has found that it was plaintiff's money that went into the Sheehan mortgage. It arrived at this conclusion, as stated in the finding, from the following considerations:

"Plaintiff's first mortgage of $2,000 became due on May 15, 1892. The Sheehan note and mortgage bear date May 16, 1892. At this time,—that is, May, 1892,—the defendant's money was invested in a mortgage due June 11, 1892. From a letter written by Weeks, dated the 23d of June, 1892, it appears that the mortgage held by the defendant was not paid off until maturity; that is, until the 11th of June, 1892. * * * The presumption from the evidence is that the money of the plaintiff was in the possession of Weeks at the time the Sheehan mortgage was executed, while the money of the defendant did not come into his possession until about a month afterwards."

We think that this finding fails of proof to support it. The Parker mortgage was taken in February, 1892. There is absolutely no proof appearing in the record, either in the declaration of Weeks or elsewhere, as to when this mortgage fell due. Interest was payable on the 15th days of May and November, respectively, and that is all that appears respecting terms or time of payment. The assumption, therefore, that the money from the Parker mortgage was in the hands of Weeks at the time when the Sheehan mortgage was taken on the 16th of May, 1892, is only an assumption, without proof to sustain it, and in no sense is any presumption raised by the Parker mortgage that the proceeds of that mortgage entered into the Sheehan mortgage. Nor is there any basis for the presumption that at the time when the Sheehan mortgage was taken Weeks had this money, the proceeds of the Parker mortgage, in his hands. If we look at Weeks' statements, made to the plaintiff, they do not aid to a solution of this question. He simply states that the Parker mortgage was paid off; but when this was done he does not say, and nothing is found in the testimony of plaintiff that this money formed the consideration for the Sheehan mortgage, except the bare declaration of Weeks. Whatever presumptions arise, if there be any, from the declarations of Weeks, are as strong in favor of the defendant as in favor of the plaintiff, while the similarity of dates between the time of payment of the Parker mortgage and the execution of the Sheehan mortgage creates no presumption whatever, for the reason that there is no proof of such similarity, as there is no proof when the Parker mortgage fell due, or proof that at this time Weeks had a dollar of plaintiff's money in his hands from that source or any other. We are of opinion, therefore, that defendant has established title to this mortgage, both legal and equitable, and was, therefore, entitled to judgment in his favor.

The judgment should therefore be reversed, but, in view of the peculiar equities, it should be without costs. All concur.