## TALMAGE v. RUSSELL et al.

(Supreme Court, Appellate Division, Second Department. June 6, 1902.)

1. TRUSTS—ESTABLISHMENT—LIMITATIONS.

Code Civ. Proc. § 388, declares that all actions the limitation of which is not provided for in the article or preceding one shall be barred in 10 years, and such articles place no limitation on a suit for the establishment of a trust. One negotiating a sale of land took the purchase-money bond and mortgage in his own name, and assigned them, and the assignee foreclosed. *Held*, in a suit by the owner to have the property declared impressed with a trust, that, whether the trust was an express one or one ex maleficio, limitations commenced to run when the mortgage was foreclosed by the assignee.

2. SAME—FRAUD—DISCOVERY.

Code Civ. Proc. § 382, subd. 5, provides that an action to recover judgment other than for a sum of money on the ground of fraud shall not be barred until the expiration of six years from the discovery of the fraud. *Held*, that where one negotiating a sale of land as agent for the owner wrongfully took the purchase-money bond and mortgage in his

own name, and assigned them, and the assignee foreclosed, the transfer being of record, limitations commenced to run against a suit by the owner for a declaration of a trust in her favor when the owner discovered the bond in the name of her agent and the assignment by him.

Appeal from special term, Queens county.

Action by Sarah J. Talmage against May A. Russell, individually and as executrix under the will of David M. Talmage, deceased, and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Rufus M. Williams (M. I. Falk, on the brief), for appellant.
C. A. S. Van Nostrand, for respondent Mary A. Russell.

HIRSCHBERG, J.   For many years prior to 1880 the plaintiff, Sarah J. Talmage, had been the owner in fee of certain unincumbered real estate in Queens county. Through her husband, David M. Talmage, she negotiated a sale of the property to a Mrs. Eda Rubino, for the sum of $25,000. She executed a deed of the property to the purchaser, which was dated May 1, 1880, and recorded June 9, 1880. She never saw the purchaser, her husband attending wholly to the transaction. Her husband received the sum of $5,000 cash paid upon the purchase, and also took in his own name a bond secured by a purchase-money mortgage for the balance, $20,000, which mortgage was dated May 1, 1880, and recorded at the same time as the deed, and was made payable in five years from date. The attorney who represented Mrs. Rubino required a written consent from the plaintiff authorizing the execution of the bond and mortgage in the name of Mr. Talmage, and this the latter procured from the plaintiff by representing to her, as she says, that it was a consent for the execution of such bond and mortgage to herself. She claims that she did not read the consent, and that she did not know at the time that the bond and mortgage were taken in her husband's name. She separated from him in the year 1883, and they never after lived together. On November 15, 1881, Mr. Talmage assigned the bond and mortgage to the defendant Mary A. Russell for the expressed consideration of $20,000, and the assignment was duly recorded. Mrs. Russell, the assignee, commenced an action to foreclose the mortgage in January, 1882, against Mrs. Rubino and her husband, and in that action the defendants set up as a defense that the action was not brought in the name of the real party in interest. The referee to whom the issues were referred to hear and determine found as a fact in his report, dated August 1, 1883, that David M. Talmage had procured and delivered to the attorney for Mrs. Rubino the consent in writing executed by the plaintiff herein, dated May 14, 1880, consenting that the $5,000 cash be paid and the $20,000 bond and mortgage be executed to Mr. Talmage; and as conclusions of law that Mrs. Russell was the lawful owner and holder of the bond and mortgage, and that the foreclosure action was prosecuted in the name of the real party in interest. Judgment of foreclosure and sale was entered August 6, 1883, and the plaintiff in

the foreclosure suit, Mary A. Russell, purchased the property at the sale, and received the referee's deed, dated September 24, 1883, and recorded September 29, 1883. On the day last named she conveyed the property to her sister, Sarah Watson. The latter conveyed two pieces of the property to the firm of D. A. Harrison & Co.,—one piece on March 14, 1892, and the other piece on March 27, 1895,—and on March 28, 1895, she reconveyed all the remainder of the property to her sister, Mary A. Russell. Each of the deeds was recorded shortly after its execution. David M. Talmage died September 9, 1900, leaving a will dated December 3, 1897, in which he named Mary A. Russell as his sole executrix and trustee, to whom he bequeathed and devised all his property in trust for the benefit of his children and of the defendant Ida Virginia Talmage, to whom he referred in the will as his "beloved wife." On December 3, 1897, the day the will was made, he executed a written agreement with Mrs. Russell by which she agreed, in consideration of the sum of $1,000, recited as then paid to her, to convey all the real estate in question which had been deeded to her by Sarah Watson to the executrix of his will; in trust and for the purposes and with the intent of carrying out the provisions and trusts contained in the will. For many years before his death, and, indeed, during most of the time subsequent to the foreclosure sale, David M. Talmage lived upon the property. Mrs. Russell lived with him. But Mr. Harrison, of the firm mentioned, testified that in the purchase of the real estate made by his firm Mr. Talmage conducted the negotiations and received the purchase money; and a tenant who occupied a part of the property testified that he hired from Mr. Talmage, and paid him the rent. This action was begun on November 27, 1900, more than 20 years after the giving of the purchase-money mortgage. The defendants are Mary A. Russell individually and as executrix of the last will and testament of David M. Talmage, deceased, the beneficiaries under the will, and the tenants of the property. The complaint, which is verified, charges that the action of David M. Talmage in taking the bond and mortgage in his own name was unauthorized and unlawful, and constituted him a trustee thereof for the plaintiff's benefit; that the assignment of the bond and mortgage to Mary A. Russell, the foreclosure suit, and the purchase by her at the foreclosure sale, the conveyance to Sarah Watson, and the reconveyance by the latter to Mary A. Russell were each in bad faith, without consideration, and for the purpose of aiding David M. Talmage in wrongfully depriving the plaintiff of her property and of her legal rights; and that the property has accordingly been at all times and still is impressed with the trust in plaintiff's favor. The relief sought is chiefly that Mrs. Russell be required to convey to the plaintiff all the property of which she still holds the title, to account for the rent, income, and profits arising out of the use, enjoyment, and possession of the property, and to pay to the plaintiff the amount which may be found due, together with the market value of so much of the property as has been conveyed to the firm of Harrison & Co. The decision of the learned trial justice was based on the defense that the plaintiff's claim was barred by the statute of limitations, and no other question will be considered than the correctness of that conclusion.

There was no proof of the purpose of the various conveyances and transfers other than was to be inferred from the documents, nor was there any proof of want of consideration. The plaintiff testified that until she was informed by her attorney in the year 1900, shortly before the commencement of the action, she had no knowledge of the assignment of the bond and mortgage to Mrs. Russell, or of the foreclosure suit, or of any of the subsequent conveyances; and that she had never received anything whatever on account of the property, either by way of principal or interest. She admitted, however, that she knew as early as 1883—the year she separated from her husband—that the bond and mortgage were in his name. She inquired of him why she was not receiving any interest, and he informed her that he had taken the bond and mortgage himself, whereupon she consulted her lawyer, and commenced a suit, which was shortly afterwards withdrawn. She said:

"I remember a person by the name of William L. Whiting. He is a lawyer. I consulted him about this property somewhere about 1883. I think about that time. I consulted him about this bond and mortgage. I had found out that the mortgage had been made to my husband at that time. I asked him, when I found there was no interest paid. I asked him what it meant, and then I asked him whether the mortgage had been put in my name. He said, 'No, it is put in my name.' This was along about the time,—somewhere about 1883. I am not positive. A suit was commenced at that time. Something was served on him. Mr. Whiting served it himself. It was in reference to this property and this mortgage. That suit was discontinued. My husband called upon me, and he was so— He said it would injure him very much if it went on, and it was dropped then and there. The suit was discontinued. * * * In relation to this suit, about the year 1883, I know Mr. Whiting served Mr. Talmage with a summons. Mr. Talmage came to me immediately after the paper was served on him. I was over at my mother's, and he came up to see me. He told me it would be utter ruin to him if I was to pursue it at that time. He said it would injure him in other ways besides that."

The summons then served was put in evidence. It is dated May 14, 1883, and both David M. Talmage and Mary A. Russell are named as defendants. It was canceled and withdrawn and the suit discontinued on May 18, 1883. No explanation whatever was offered by the plaintiff as to the nature of the suit excepting the statement that it was in reference to the bond and mortgage, nor was any reason assigned for the joining of Mrs. Russell as a defendant. The foreclosure suit was then pending, and the inference is irresistible that Mrs. Russell was joined as a defendant because the plaintiff or her attorney then knew that she claimed to own the bond and mortgage, and because they then desired in some way to prevent her from successfully urging such claim. On no other theory can her presence as a necessary or proper party defendant be accounted for. In this connection it should be noted that in her complaint the plaintiff alleges that "upon discovery by plaintiff that said bond and mortgage was not in her name, plaintiff caused to be demanded of the said David M. Talmage that he pay over to her all moneys received on said bond and mortgage, together with said bond and mortgage; but plaintiff never received said bond and mortgage, or any moneys paid thereon, and at no time received from said David M. Talmage any satisfactory explanation regarding the same."

If this demand and refusal preceded the service of the summons, it would be natural for the attorney to examine the records before commencing any suit about the mortgage which Mr. Talmage had refused to give up, and such examination would, of course, disclose the assignment to Mrs. Russell. The trial court disposed of the case in accordance with the law. It is not always easy to determine the period of limitation in cases of this general character, but it is settled that "under the law of this state there is a fixed limitation for every cause of action, whether legal or equitable." Gilmore v. Ham, 142 N. Y. 1, 6, 36 N. E. 826, 827, 40 Am. St. Rep. 554. It was pointed out in that case that, even where there is a direct trust, the statute of limitations begins to run when the trust ends, and the trustee has no longer a right to hold the trust fund or property, but is bound to pay it over or transfer it, discharged from the trust. In this case there cannot be said to be a direct trust, but at most a trust ex maleficio; and, while the claim is probably barred in either view, as the case of a trust ex maleficio, it would seem clearly to be subject to the 10-year limitation of section 388 of the Code of Civil Procedure.

In Yeoman v. Townshend, 74 Hun, 625, 627, 26 N. Y. Supp. 606, 609, the court said:

"A distinction must be drawn with respect to the statute of limitations between an actual, express, subsisting trust or a case of actual fraud, and the case of an implied trust, of a trustee ex maleficio, or a constructive fraud. In the two former the statute does not begin to run against the beneficiary or cestui que trust until the trustee has openly, to the knowledge of the beneficiary, renounced, repudiated, or disclaimed the trust; while in the latter cases the statute begins to run from the time the wrong was committed by one chargeable as trustee by implication. This distinction is recognized by our Code of Civil Procedure. Thus, by section 410 it is provided that, where a right grows out of the receipt or detention of money·or property by an agent, trustee, attorney, or other person acting in a fiduciary capacity, the time must be computed from the time when the person having the right to make the demand has actual knowledge of the facts upon which that right depends."

In Lammer v. Stoddard, 103 N. Y. 672, 673, 9 N. E. 328, 329, the court said:

"If this were an action to recover the debt evidenced by the bond and mortgage, it is conceded that it would have been barred. But the action is to establish and enforce a trust, and hence the claim is made that it is not barred. It is undoubtedly generally true that as against a trustee of an actual, express, subsisting trust, the statute does not begin to run against the beneficiary until the trustee has openly, to the knowledge of the beneficiary, renounced, disclaimed, or repudiated the trust. But Edward Lammer was not the actual trustee of this fund, and he never acknowledged a trust as to the money loaned him. He could, at most, have been declared a trustee ex maleficio or by implication or construction of law, and in such a case the statute begins to run from the time the wrong was committed by which the party became chargeable as trustee by implication. Wilmerding v. Russ, 33 Conn. 67; Ashhurt's Appeal, 60 Pa. 290; McClane's Adm'x v. Shepherd's Ex'x, 21 N. J. Eq. 76; Decouche v. Savetier, 3 Johns. Ch. 190, 216, 8 Am. Dec. 478; Kane v. Bloodgood, 7 Johns. Ch. 90, 11 Am. Dec. 417; Ward v. Smith, 3 Sandf. Ch. 592; Higgins v. Higgins, 14 Abb. N. C. 13; Clarke v. Boorman, 18 Wall. 493, 21 L. Ed. 904; Perry, Trusts, § 865."

It follows that on the theory of the complaint, and equally whether the trust asserted be regarded as express or ex maleficio, the

plaintiff's cause of action accrued when her rights were openly defied in the year 1883.

The plaintiff is in no better position on the theory—which her counsel strongly urges—that the action is one to recover judgment for relief upon the ground of fraud, under subdivision 5 of section 382 of the Code of Civil Procedure, and is accordingly not barred until six years after discovery of the facts constituting the fraud. The complaint does not charge fraud, excepting as it may be implied from the facts stated. But, if fraud was perpetrated, it was certainly accomplished when Mr. Talmage took the bond and mortgage in his own name, and disposed of them to Mrs. Russell for his own benefit. All this was known to the plaintiff in May, 1883, more than 17 years before the commencement of this action; or, if all the facts were not known, there was at least sufficient disclosed to put a person of ordinary intelligence, care, and prudence upon inquiry; and, as all the essential facts are matter of record, it is obvious that inquiry would have been availing. See Higgins v. Crouse, 147 N. Y. 411, 42 N. E. 6. Certainly the plaintiff could have sued her husband and Mrs. Russell in 1883 for redress either at law or in equity, and any cause of action which she might have must be deemed to have then accrued. Price v. Mulford, 107 N. Y. 303, 14 N. E. 298; Roberts v. Ely, 113 N. Y. 128, 20 N. E. 606. By voluntarily withdrawing the action which she then instituted, and by allowing all the subsequent years to pass without appealing to the courts, she has permitted her rights to be lost in the lapse of time; and, even although upon the facts it be conceded that her husband was wrongfully in the possession of her property during the whole period, and that all the transfers of it were intentionally made in his interests, and with a view of wrongfully depriving her of her rights, yet it cannot be doubted that the statutory period has expired for every legal or equitable remedy. The judgment should be affirmed.

Judgment affirmed, without costs. All concur.