EAST LAKE LUMBER COMPANY, Plaintiff, *v.* GREENLEAF S. VANGORDER, EVA E. VANGORDER, and MARY E. VANGORDER, Defendants.

(Supreme Court, Erie Equity Term, January, 1919.)

**Statute of Limitations — when begins to run — corporations — stocks — evidence — fraud — Code Civ. Pro. §§ 382(5), 388.**

Upon the issuance of corporate stock, the stockholders have the right to permit such value to be placed upon the property of the corporation as they choose and may permit the stock to be issued for such lawful considerations as they choose and, if no rights of creditors or the public are affected, the corporation may not be heard to complain.

Where stockholders at all times acquiesced in the issuance of stock they had approved of they are bound by such action as well as the corporation.

Where it appears that the stock was in fact issued as a result of corporate action and was not only a part of but was the very plan and purpose which underlay the formation and organization of the corporation, no formal resolution was necessary to legalize the issuance of the stock.

In an action to have adjudged and declared null and void certain certificates of stock in the plaintiff corporation issued to the defendants and severally held by them and directing the cancellation of said stock upon the ground that it was issued unlawfully and without authority of plaintiff, the ten-year Statute of Limitations (Code Civ. Pro. § 388) applies and begins to run from the time when said stock was in fact issued.

It appearing that there was no actual fraud in the issuance of said stock issued to the principal defendant, but that it was issued with full knowledge of the then stockholders and upon said defendant's assertion that it was being issued to him by reason of his one-quarter interest in an option for the purchase of a certain timber tract, to take over which the corporation had been organized, and on account of services rendered and disbursements incurred by him, section 382(5) of the Code of Civil Procedure, postponing the running of the Statute of Limitations until the discovery of the fraud, does not apply.

> Evidence considered and complaint dismissed upon the merits and defendants given judgment upon their counterclaim for the amount of their *pro rata* shares in the distribution of certain stock, with interest.

ACTION to procure a judgment declaring certain certificates of stock to be null and void.

Wilcox & Van Allen (H. G. Aron, of counsel),. for plaintiff.

· VanGorder, Holt, Hickey & Craine (E. W. Holt, of counsel), for defendants.

COLE, J. This action is brought to procure the judgment of this court declaring certain certificates of stock in the plaintiff corporation heretofore issued to the defendants Greenleaf S. VanGorder, Mary E. VanGorder, Eva E. VanGorder, and now severally held by them, to be null and void, and directing the cancellation of the same, upon the claim alleged that such shares were issued unlawfully and without authority of the plaintiff.

The properties of the corporation situated in North Carolina were sold about the year 1917; dissolution of the corporation was contemplated; the directors authorized a partial distribution of the proceeds of the sale among the stockholders, amounting to $29.50 per share of $100, and directed the commencement of this action, withholding the *pro rata* share of the defendants in such distribution pending the determination of this action. The defendants in addition to putting in issue the facts upon which the plaintiff's alleged cause of action rests, have severally counterclaimed for the amounts of their said *pro rata* shares respec-. tively so withheld. A demurrer to the counterclaim has been overruled. The following pertinent facts are established, viz.:

45

Supreme Court, January, 1919.    [Vol. 105.

In 1904 Henry H. Persons and John R. Hazel as receivers of the Bank of Commerce of Buffalo; John H. Lascelle as receiver of the American Exchange Bank of Buffalo; The Peoples Bank of Buffalo, and Ensign & Son, a partnership of North East, Penn., were the owners of a large timber tract in North Carolina. Greenleaf S. VanGorder was an attorney at law, practicing in the city of Buffalo. One R. E. Johnson, a cousin of said VanGorder, by arrangement with VanGorder, procured an option on September 23, 1904, from the owners for the purchase of this timber tract, for $125,000, $2,000 being paid down; $3,000 was to be paid by December 1, 1904, and a purchase money mortgage was to be given for the balance. This option was procured through the assistance of Van-Gorder, who aided materially in the negotiations, and the arrangement was made by Johnson and Van-Gorder and the option procured in contemplation of the formation of a corporation to take over the property, and under this arrangement it was agreed between Johnson and VanGorder that the option was to be taken in Johnson's name, but that VanGorder was to have a one-fourth interest therein. The down payment was made by Johnson; 75 shares of stock later issued by the corporation to VanGorder as hereinafter stated were later applied upon the purchase price and a mortgage for $120,000 was given by the corporation soon after its organization. The certificate of incorporation of the plaintiff was filed on or about the 27th day of September, 1904. Its authorized capital was $500,000, divided in 5,000 shares of $100 each. The organization meeting was held in Buffalo on October 13, 1904, and was attended by the incorporators who were Johnson, VanGorder, Mr. Holt (a law partner of VanGorder) and one W. J. Kraemer. Mr. Johnson was elected president, VanGorder secretary

and treasurer, and Kraemer general manager. At this meeting, and as a part of the proceedings thereof, it was stated and discussed by both Johnson and Van-Gorder in effect that the corporation was organized for the purpose of taking over the timber tract if found desirable and if the title was found to be all right, and that the interest of Johnson and VanGorder in the option which had been procured in contemplation of the formation of the corporation was that of three-fourths and one-fourth respectively, and that the stock of the corporation was all to be issued to Johnson and VanGorder for the property, except such as it might be found necessary to issue incidentally for certain services, and in connection with the purchase and equipment of a mill. It was also stated that it was best that the stock should not all then be issued, but that such portions as it was found necessary to issue for such incidental purposes to other persons be issued directly to such other persons, as required, and that the balance be issued from time to time to Johnson and VanGorder. It was not contemplated at that time or at any time that any portion of the stock be issued and sold upon the market, but it was all to be issued for the property and for the other incidental purposes above indicated. This plan and purpose so stated was in fact acquiesced in by all of the stockholders at said meeting. A resolution was passed authorizing the secretary and treasurer to purchase the property at the best terms available, not exceeding $500,000, and to receive the deeds, and authorizing the officers of the company to execute a purchase money mortgage for $120,000. By another resolution VanGorder was retained to examine the property and the title, and another resolution authorized Johnson to purchase a band mill from Parkhurst & Co. on the best terms available. The next day an adjourned

meeting of the directors was held at which a resolu-
tion was again adopted authorizing VanGorder as
secretary and treasurer to purchase the land at the
best terms available, not exceeding $500,000, and to
receive the deed therefor, and authorizing the officers
to execute a purchase money mortgage for $120,000.
No formal resolution was adopted at either of these
meetings, authorizing the issuance of any stock.  In
fact, however, on the day of this meeting the follow-
ing shares were issued directly to the following named
persons, viz.:  To Johnson, 500 shares; to VanGorder,
325 shares; to Holt (for legal services), 5 shares; to
Kraemer (for legal services), 100 shares; to Park-
hurst & Co., in payment for band mill, 120 shares;
to H. A. Arnold (for services rendered or to be ren-
dered), 50 shares; to O. L. Snyder (for services ren-
dered or to be rendered), 5 shares.

While these shares were issued directly to the above
named persons, the shares to Parkhurst, Arnold and
Snyder were in fact turned over to Johnson to be by
him thereafter delivered, and were in fact thereafter
delivered by him to them.  Between this date and
December 12, 1904, Holt received five shares more for
services, and Johnson 265 shares more, making a total
of 1,375 shares.  All of these were in fact issued on
Johnson's account, and on that date Johnson gave
the following receipt therefor, viz.:

                              " *December* 12, 1904.

" Received of East Lake Lumber Co. by the hand
of G. S. VanGorder, Secretary and Treasurer, $137,500
in various payments heretofore made to me to apply
on purchase price of Dare Co. land as per contract of
October 14, 1904.                R. E. Johnson."

On October 14, 1904, the contract, or option, so held
in Johnson's name, was assigned to the corporation,

the agreed price being $358,500. A deed was executed and delivered by the owners to the corporation on the same date and a purchase money mortgage was on the same date executed by the corporation to the said vendors for $120,000. Seventy-five shares of the stock which were later issued to VanGorder were also delivered to the vendors. The down payment in cash, the seventy-five shares of stock, and the said purchase money mortgage constituted in full the payment of the purchase price to the vendors under the option which they had given to Johnson.

At a directors' meeting held January 2, 1905, the action of VanGorder in making the purchase for $358,-500 and the giving of the mortgage for $120,000 were ratified by resolution. On September 20, 1905, there were issued to Johnson 1,135 shares. On November 20, 1905, the directors held a meeting at which the following bills were presented, viz.: Johnson for $116,-500 for services and disbursements; VanGorder for $50,000 for services and disbursements; Holt for $1,000 for services and disbursements; C. A. Craine for $100 for services; D. M. Stringfield, $200 for services.

These bills were each allowed payable in stock, except $50,000 received on sale of certain properties which was to be retained by Johnson as part payment. Certificates of shares were issued to Holt, Craine and Stringfield in the amount of their bills as allowed.

There were issued to VanGorder on November twentieth and twenty-second, 800 shares; to Eva E. VanGorder, 50 shares; to Mary E. VanGorder, 50 shares. There were issued to Johnson on November twenty-second, 1,350 shares.

Of this amount two certificates aggregating 200 shares were surrendered and cancelled, and one of

them for 100 shares was re-issued to a man by the name of Brown for services which he had rendered.

Certain other shares were subsequently issued in small amounts to other parties for services and property purchased. At a meeting of the directors on September 11, 1906, a resolution was passed authorizing the issuance of " 217 shares being the unissued stock " to Johnson. This stock was issued as follows on that date, viz.: To Johnson, 180 shares; to Eva E. VanGorder account of Johnson, 37 shares.

The following is a summary of the shares of stock issued to the VanGorders, viz.: October 14, 1904, to G. S. VanGorder, 325 shares; November 22, 1905, to G. S. VanGorder, 800 shares; November 22, 1905, to Eva E. VanGorder, 50 shares; November 22, 1905, to Mary E. VanGorder, 50 shares; September 11, 1906, to Eva E. VanGorder, 37 shares. Total, 1,262 shares.

This number, however, is not all chargeable to VanGorder for the following reasons: 50 of said shares (consisting of two certificates of 25 each) although issued in form to VanGorder, were in fact on Johnson's account, and were at Johnson's request turned over to Eva Johnson and Euphemia Moon, sisters of Johnson. Seventy-five shares issued to VanGorder were on account of the purchase price of the lands and were by him delivered to the vendors, and the 37 shares issued to Eva E. VanGorder on September 11, 1906, were on Johnson's account. The 325 shares issued October 14, 1905, were in fact receipted for by Johnson and were on his account. The following deductions should therefore be made from the 1,262 shares, viz.: To Eva E. VanGorder, 37 shares; shares of Eva Johnson and Euphemia Moon, 50; account of purchase price, 75 shares; shares to VanGorder October 14, 1904, 325. Total, 487 shares. Balance chargeable to VanGorder, 775 shares.

The fact, however, of these 325 shares being issued on Johnson's account, although in form and in fact to VanGorder, affords the most convincing proof that the arrangement as to their relative interest was as claimed by VanGorder and that these shares were issued to VanGorder to carry out that arrangement.

The only formal resolutions passed authorizing the issue of stock were those of November 20, 1905, and September 11, 1906. The several shares were in fact issued, however, in pursuance of the original plan and purpose communicated at the first meeting, and with the full knowledge and acquiescence of all the stockholders, and the holdings of VanGorder, and the considerations for the issuance of stock to both him and Johnson were well known to the other stockholders, including Johnson, who signed all of the certificates as president, and were fully acquiesced in by all of them. Many of the shares of stock ultimately passed into other hands. Of the shares issued to the Van-Gorders, a portion thereof was disposed of by them for a valuable consideration to *bona fide* purchasers, but 856 of such shares are still owned by the Van-Gorders as follows: G. S. VanGorder, 225 shares; Eva E. VanGorder, 397 shares; Mary E. VanGorder, 234 shares.

Johnson remained president until June 8, 1908, and remained a director until the time of his death, which occurred between the time of the commencement of the trial of this action in May, and its conclusion in June, 1918.

John C. Gittings and Alexander Muncaster are attorneys residing at Washington, D. C. Thomas M. Gittings is a son of John C. Gittings. These men acquired the greater part of Johnson's stock, part thereof in their own right, and the balance of their holdings by J. C. Gittings as trustee for Johnson, and

their interests were acquired about June, 1908, at which time John C. Gittings became a director and president. In connection with his duties as president, he was informed at about that time by VanGorder of the interest which VanGorder and Johnson had respectively in the option for the purchase of the North Carolina properties; of the original plan and purpose and of the consideration for the issuance of the stock to VanGorder and Johnson, and that no money consideration had ever been directly paid for any of the stock. The stock of the corporation was in fact all issued as already appears, prior to September 11, 1906, except 217 shares which were issued on that date. The last of the shares issued on VanGorder's account were issued November 22, 1905. In 1917 the properties were sold. The Gittings and Muncaster had acquired control of the corporation by reason of their ownership of a majority of the stock. After the sale of the property and before distribution of the proceeds, VanGorder claimed to have discovered that these officers of the company had sold the property for $333,000 and that they represented that the sale was for $200,000, and that extortionate bills for legal services performed by Gittings were being allowed by the officers and VanGorder forbade the bank in which the money was deposited to pay out the same, and Mary E. VanGorder began a derivative action for the minority stockholders in Washington, D. C., against the directors to recover for the corporation the moneys so claimed to be withheld. With that controversy this court has nothing to do in this action. It is a relevant and significant circumstance, however, and worthy of consideration on the question of acquiescence, which is hereinafter discussed, that it was at this time that the present officers caused the removal of VanGorder as

secretary and treasurer and this action to be commenced. .

The defendants urge at the outset that the right to maintain this action is barred by the Statute of Limitations. While it is unnecessary to the defense that this contention be sustained, yet I am of the opinion that the position is well taken. I think it quite clear that the ten-year Statute of Limitations (Code Civ. Pro. § 388) is applicable, and that the statute began to run at the time when the stock alleged to have been unlawfully issued was in fact issued, viz.: November 22, 1905. This action was not begun until November, 1917. There was clearly no actual fraud in the issuance of stock to VanGorder. It was issued with the full knowledge of all of the then stockholders and upon his open assertion that it was being issued to him by reason of a one-fourth interest in the option, and on account of services rendered and disbursements incurred by him, and therefore the provisions of subdivision 5 of section 382 of the Code of Civil Procedure, postponing the running of the statute until the discovery of the fraud, do not apply. *Spallholz* v. *Sheldon,* 158 App. Div. 367; affd., 216 N. Y. 205.

It is urged by the plaintiff that the running of the statute was suspended by reason of the trust relation said to exist between VanGorder and the corporation. The general rule no doubt is that as to a trustee of an actual express and subsisting trust, the statute does not begin to run against the beneficiary until the trustee has openly, to the knowledge of the beneficiary, renounced, disclaimed or repudiated the trust. *Lammer* v. *Stoddard,* 103 N. Y. 672; *Gilmore* v. *Ham,* 142 id. 1.

There are two answers, however, to this contention: (a) The trust relation if one existed did not exist as to the *corporation,* except as to the *corporate*

*properties.* As to the *stock* the trust existed only as to the *stockholders.* Pom. Eq. Juris. (3d ed.) §§ 1089–1091. (b) The rule contended for is applicable only in the case of an actual express and subsisting trust, and does not apply to a constructive trust, an implied trust, or a trustee *ex maleficio. Lammer* v. *Stoddard,* 103 N. Y. 672; *Gilmore* v. *Ham,* 142 id. 1; *Talmage* v. *Russell,* 74 App. Div. 7–14; *Yeoman* v. *Townshend,* 74 Hun, 625; *Finnegan* v. *McGuffog,* 139 App. Div. 899.

Nor do I think the running of the Statute of Limitations is suspended by reason of the alleged analogy between this action and actions to remove a cloud upon title. The attack is upon the act of VanGorder in issuing this stock to himself. *Ford* v. *Clendenin,* 155 App. Div. 433.

VanGorder was an officer and had the custody of the records until his removal by the present directors in 1917, but the facts were known to Johnson who was president and to the other stockholders, and it must be held that the corporation as an entity had knowledge of the facts through its other officers and directors.

I think, therefore, that the action is barred by the ten-year Statute of Limitations.

On the merits I think the action should not be maintained. The first 325 shares of the 725 said to have been issued without authority to the VanGorders, were in fact issued on Johnson's account, and were receipted for by him. All of the stock issued to Van-Gorder, either on his own account or on account of Johnson, was in fact issued because of his interest which he had in the option by arrangement with Johnson, and it was so understood by all of the stockholders until the entire authorized shares had been issued, and it was acquiesced in by all of the stockholders at meetings thereof at a time when neither the public

nor any creditors had any interest in the matter, and neither the public nor creditors have now any interest therein.

Johnson, whose stock has since passed into the hands of the parties who are now the officers instigating this action, was a party to its issuance.

The stockholders had the right at the time of its issuance to permit such value to be placed upon the property as they chose, and to permit the stock to be issued for such considerations as they chose, not in violation of law, and, if no rights of creditors or of the public were affected (and such is the situation here), the corporation could not complain. *Bostwick* v. *Young,* 118 App. Div. 490; *Little* v. *Garabrant,* 90 Hun, 404; *Seymour* v. *Spring Forest C. Assn.,* 144 N. Y. 340; *Blum* v. *Whitney,* 185 id. 233; *Lorillard* v. *Clyde,* 86 id. 384.

The issuance of this stock was not only approved by the stockholders at the time, but was at all times acquiesced in by them, and became binding upon them and upon the corporation. *Blum* v. *Whitney,* 185 N. Y. 233; 10 Cyc. 1075.

The plaintiff urged at the trial and now urges very strenuously that this arrangement between Johnson and VanGorder was not binding upon the corporation. It was in fact, however, communicated to all the stockholders at the meeting, and was in fact acquiesced in by them and was a part of, and in fact was, *the* very plan and purpose which underlay the formation and organization of the corporation, and the stock was in fact issued as a result of corporate action. Under these circumstances no formal resolution was necessary. *Seymour* v. *Spring Forest C. Assn.,* 144 N. Y. 340.

The plaintiff also urges that proof of this arrangement and of its disclosure and discussion at the cor-

porate meeting was not admissible; that it contra-. dicted and added to the minutes. Proof of that arrangement and of the acquiescence of the stockholders in the issuance of the stock was not incompetent because it was not in fact entered on the minutes, so long as it did not contradict the minutes. *Moss* v. *Averell,* 10 N. Y. 449; *Handley* v. *Stutz,* 139 U. S. 417; *Trustees of St. Mary's Church* v. *Cagger,* 6 Barb. 577– 580; 1 Purdy's Beach Priv. Corp. § 108; 2 id. § 685; 10 Cyc. 1032; 17 id. 506.

The complaint should be dismissed and the defendants respectively are entitled to recover upon their several counterclaims the amount of their *pro rata* shares in the distribution ordered, viz.: G. S. VanGorder, 225 shares at $29.50, $6,637.50; Eva E. VanGorder, 397 shares at $29.50, $11,611.50; Mary E. VanGorder, 234 shares at $29.50, $6,903.

To these several amounts there may be added interest from June 3, 1917.

The defendants are entitled to costs, and the judgment may so provide.

Judgment accordingly.