JOSEPH J. LITTLE, as Receiver of THE WORTHINGTON COMPANY, Appellant, *v.* DAVID G. GARABRANT and Others, Respondents, Impleaded with Another.

*Corporation — ultra vires — when illegal payments may be ratified by stockholders — rights of subsequent creditors.*

In an action brought by the receiver of a corporation to have it adjudged that a policy of insurance upon the life of a director payable to his wife, who was also a director, belonged to the receiver, upon the ground that the premiums were paid out of the funds of the corporation, it appeared that the shareholders of the corporation practically formed a single family of which the two directors were members; that the corporation was conducted after the manner of a partnership; that all family expenses, rent, fire insurance, taxes and charitable contributions, were paid out of the moneys of the corporation, and that all such transactions took place openly, and, so far as appeared, with the assent of the real owners of all the shares of stock; that the corporation was solvent at the time the payments in question were made, and that no rights of creditors then intervened; that none of the indebtedness of the creditors of the corporation who were represented by the receiver arose prior to the payments in question.

*Held*, that the corporation, if in existence, could not have maintained the action, and that its receiver stood in no better position to enforce the claim;

That as no public rights intervened any misappropriations or diversions of the funds of the corporation were cured by the unanimous consent of the owners of the stock.

APPEAL by the plaintiff, Joseph J. Little, as receiver of The Worthington Company, from a judgment of the Supreme Court in favor of the defendants, David G. Garabrant and others, entered in the office of the clerk of the county of New York on the 8th day of May, 1895, upon the decision of the court rendered after a trial at the New York Special Term dismissing the complaint upon the merits.

*James M. Fisk,* for the appellant.

*Frederic A. Ward,* for the respondents.

PARKER, J.:

By this action the plaintiff seeks to have it adjudged that a policy of life insurance taken out by Richard Worthington upon his life, and made payable to Margaret Worthington, his wife, or to his legal representatives, and thereafter duly assigned for a valuable consideration to these defendants, belongs to him as receiver of the Worthington Company.

The ground upon which he bases his claim to the policy is, that from the inception of the policy, in November, 1885, down to December, 1892, the premiums, amounting to about $400 a year, were paid out of the funds of the Worthington Company, a corporation organized under the laws of this State, and charged upon the books of the company either to the account of Margaret or Richard Worthington; that at the time of the several payments the Worthington Company was not indebted to either Margaret or Richard Worthington, and, therefore, the several payments constituted an illegal and fraudulent diversion of the funds of the corporation, constituting a gross breach of trust, which entitles the plaintiff as receiver, to follow the funds, and claim the policy and the sum due thereon.

The Worthington Company was incorporated about July 1, 1885, with a capital stock of $20,000, the number of shares being 200. Of these, 139 were issued to Margaret Worthington, wife of Richard Worthington, 50 shares to a Miss Sproule, who was the housekeeper of Mrs. Worthington, and a nominal shareholder, 10 shares to Richard Worthington, and 1 share to a nephew of Mr. Worthington. From the organization of the corporation until its

dissolution, such persons continued to be the only stockholders in the company. Richard Worthington, Margaret Worthington and Miss Sproule were, from the beginning to the end, the directors and officers of the company. No dividends were ever declared, although it appears that at the annual meeting following the incorporation, the result of an examination of the affairs of the corporation by Mr. Galden showed a surplus of $42,590.26.

Instead of declaring dividends, the Worthingtons seem to have treated the assets of the corporation as something to be used in precisely the same manner as if the Worthington Company were a partnership..

From the beginning to the end all of the family expenses, rent, fire insurance, taxes, together with their contributions to charity and church and missionary societies, were paid out of the moneys of the Worthington Company by checks drawn against its account in the bank or from the proceeds of checks thus drawn.

It was in pursuance of such method and in precisely the same way that the premiums upon the policy of insurance in controversy were paid down to its assignment to these defendants. The first question which we shall consider is whether the Worthington Company, if still in existence and solvent, could maintain this action.

In *Kent* v. *Quicksilver Mining Co.* (78 N. Y. 159) the court says, at page 185 : " In the application of the doctrine of *ultra vires* it is to be borne in mind that it has two phases : One where the public is concerned ; one where the question is between the corporate body and the stockholders in it, or between it and its stockholders and third parties dealing with it and through it with them. When the public is concerned to restrain a corporation within the limit of the power given to it by its charter, an assent by the stockholders to the use of unauthorized power by the corporate body will be of no avail. When it is a question of the right of a stockholder to restrain the corporate body within its express or incidental powers, the stockholder may in many cases be denied on the ground of his express assent or his intelligent though tacit consent to the corporate action. If there be a departure from statutory direction, which is to be considered merely a breach of trust to be restrained by a stockholder, it is pertinent to consider what has been his conduct in regard thereto. A corporation may

do acts which affect the public to its harm, inasmuch as they are *per se* illegal or are *malum prohibitum.* Then no assent of stockholders can validate them. It may do acts not thus illegal, though there is want of power to do them, which affect only the interest of the stockholders. They may be made good by the assent of the stockholders so that strangers to the stockholders dealing in good faith with the corporation will be protected in a reliance upon those acts."

This language was repeated and approved in *Skinner* v. *Smith* (134 N. Y. 240).

The question that we are considering assumes that the rights of creditors and of third parties do not intervene. The payments in such a situation, although illegal, if made without the authority of the stockholders, could be validated by the assent of all of the stockholders. And this rule proceeds upon the theory that the stockholders are the equitable owners of the corporate property, and if the officers or trustees do an unauthorized act, incur an indebtedness or make a loan of its money or credit outside of the ordinary course of its business, still, if all the stockholders unite, they may subsequently ratify the acts done and thus validate that which was originally unauthorized and illegal.

This rule is illustrated in *Bissell* v. *Mich. So. & N. I. R. R. Co.* (22 N. Y. 269), and cited with approval in *Kent* v. *Quicksilver Mining Co. (supra)*:

" A bank has no authority from the State to engage in benevolent enterprises; and a subscription, though formally made for a charitable object, would be out of its powers, but it would not be otherwise an illegal act; yet if every stockholder did expressly assent to such an application of the corporate funds, though it would still be in one sense *ultra vires,* no wrong would be done, no public interest harmed, and no stockholder could object or claim that there was an infringement of his rights and have redress or protection. Such an act, though beyond the power given by the charter, unless expressly prohibited, if confirmed by the stockholders, could not be avoided by any of them to the harm of third persons. This arises from the principle that the trust for stockholders is not of a public nature." (*Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159.)

As one of the results of this rule Mr. Morawetz, in his work on

Corporations (§ 625), asserts that "if the directors of a corporation apply the funds of the company to their own use, or misapply them in any manner, the excess of authority, as between the directors and the corporation, may be cured by the unanimous consent or ratification of the stockholders."

Other authorities upon this proposition are *Martin* v. *The N. F. P. Mfg. Co. et al.* (122 N. Y. 165); *Barr et al.* v. *N. Y., L. E. & W. R. R. Co. et al.* (125 id. 263).

Now, the learned judge at Special Term asserted, and we think rightly, that not only was there no objection by the stockholders to this way of doing business, but that all the members of the corporation assented to it.

It appears that while Miss Sproule nominally held fifty shares of the stock, and Worthington's nephew one share, Mr. and Mrs. Worthington were the real owners of every share.

That both of them assented to the payment of these premiums is demonstrated by the fact that both of them signed checks made payable to the order of the insurance company for such purpose, the checks drawn by Richard Worthington being signed by him as general manager, to which position he was chosen by the directors, and as such given full authority to manage the business and use the funds of the company. And the checks drawn by Mrs. Worthington were signed by her as president of the company, to which office she was elected at the first meeting of the directors.

Thus it appears that the real holders of the stock consented to such use of the funds in advance of the payment of the premiums. Aside from this positive evidence of assent and participation in the payment of these premiums by the two persons who were the real holders of the stock, there is other evidence in abundance in the record to support a finding of fact that each of them acquiesced in such disposition of the moneys. There was no concealment. All of the transactions appear openly upon the books of the company. Some of the expenses were charged to the account of Mrs. Worthington, and others to the account of Richard Worthington, but from one fund, and in the same way were paid all of the expenses of the family and of the Worthingtons individually, and towards that result each contributed by signing checks in their respective official capacities. Without further discussion of the evidence under this head, it

is quite apparent that the learned judge at Special Term was right in saying that all the members of the corporation assented to the use of the funds of the company for the purpose of paying these premiums. But it appears from the evidence, conclusively, that the nominal stockholders assented as well. Miss Sproule, who was the housekeeper and lived with the Worthingtons, was a director of the corporation during all of its existence, some of the time an officer of the company, and during a considerable period of time a clerk constantly in attendance at the store; she made entries in the books and attended the meetings of the trustees. As their method of paying the family expenses and other personal bills out of the funds of the company, and charging them against the real owners of the stock began immediately upon the formation of the company and continued throughout its existence, it is evident, without further reference to the evidence, that the nominal stockholders assented fully to such use of the funds for the benefit of the real stockholders.

The conclusion necessarily follows that, if the corporation were in existence and solvent, it could not maintain this action. The receiver, it is true, represents not only the corporation but the creditors and stockholders as well, but, as trustee for the corporation and stockholders, he stands in no better position to enforce this claim than did they.

In their behalf, the rights of creditors not intervening, he could not maintain an action which the corporation would be prevented from maintaining were it in existence.

In his capacity as trustee for the corporation he would not be precluded from a successful prosecution of the action, because of the assent of all of the stockholders to the use of its funds for purposes outside of the business of the corporation, provided it were the fact that the corporation was insolvent at the time such payments were made. But, as was truly said at Special Term, there is no evidence that the corporation was insolvent at the time of the making of the several payments, nor does it appear that the indebtedness to any of the present creditors of the corporation arose prior to such payments.

So far as this record discloses, therefore, the receiver is in no better position to prosecute this action than the corporation would be were it in existence, solvent and making a like attempt.

It follows, if the views expressed be sound, that there is no occasion for a consideration of the other questions discussed by counsel. The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment affirmed, with costs.