JORNDT, Respondent, v. REUTER HUB & SPOKE
COMPANY, Appellant.

St. Louis Court of Appeals, May 2, 1905.

1. **CORPORATIONS: Powers of Officers: Converting Assets.**
Neither the executive officers nor the directors of a corpor-
ation have a right to convert its assets to their own use or make
any self-serving disposition of them against the interest of the
company.

2. ———: ———: ———. But where there are no stockholders
except the directors and officers, they may by unanimous con-
sent make any disposition of the assets of the corporation which
will not impair the rights of creditors.

3. ———: ———: ———. Where the officers of a lumber com-
pany, a corporation, used the culls and refuse product of the
mill for fuel, for a considerable time, and there was nothing
to show that there were any stockholders besides the officers
of the company, or that any one interested in the company ob-
jected to such use, a finding by the trial court that such officers
were not chargeable with the conversion of said products, will
not be disturbed.

4. **APPELLATE PRACTICE: Burden on Appellant to Show Error.**
It devolves upon the appealing party to show that error was
committed in the trial court and where the facts presented by
the record are so meagre that the appellate court cannot tell
whether error was committed or not, the judgment will be af-
firmed.

Appeal from Stoddard Circuit Court.—*Hon. James L.
Fort,* Judge.

AFFIRMED.

*Liles & Munger* for appellant.

*Mozley & Wommack* for respondent.

GOODE, J.—The defendant is an incorporated
company engaged in the manufacture of wagon spokes
and hubs at Dexter, in Stoddard county. Prior to the

months of November and December, 1903, plaintiff was president and general manager of the company at a fixed salary of one hundred dollars a month. He ceased to be general manager on the eighth day of December, 1903, and has sued for $130.75, as a balance due on salary. He was paid for his services except for the month of November and the early part of December. The answer admitted plaintiff was president and general manager to December 1, 1903, at a salary of one hundred dollars a month; but said he ceased to be president on December first because, prior to that time, he had sold all his stock in the corporation and turned over the management to E. C. and A. C. Mohrstadt, who were, in fact, in charge of the positions of president and general manager before the sale; wherefore it was averred plaintiff was not entitled to a salary after December 1st. The answer contains an allegation that plaintiff had been paid in full for services rendered before December first. Besides the above defences the answer sets up a counterclaim in which it is alleged the defendant, in the operation of its factory, has left faulty hubs, low grade and cull spokes, and other material suitable for fuel, all of which has a market value; that during the months of October, November and December, 1903, plaintiff hauled from the factory for fuel large quantities of low grade spokes and other material, aggregating in value $192.25; for which sum the defendant prayed an affirmative judgment against the plaintiff. This matter was probably inadmissible as counterclaim, being an alleged ' conversion not connected with the plaintiff's cause of action. But no such point was raised below, nor is it raised here. There was no testimony to sustain the defense that plaintiff had not performed the duties of president and general manager until December 8 or that he had not been paid in full to December 1, as was averred in the answer. In support of the counterclaim evidence was adduced tending to prove that plaintiff during the fall of 1903, had hauled away for fuel fifteen or twenty loads of wood

consisting of cull spokes and other refuse articles which had a value at the mill of from sixty cents to one dollar a load. The plaintiff admitted that much himself. The bookkeeper testified that the quantity of stuff hauled away by the plaintiff amounted in value to about $190. But the uncontradicted testimony was that all the officers of the company got their fuel from the mill and were never charged for it. The court instructed the jury that if plaintiff caused fuel of value to be removed from the factory without paying for it, the verdict on the counterclaim should be in favor of the defendant for the reasonable value of the fuel at the time it was taken, unless the jury found it was not to be charged for by reason of a general understanding to that effect between the officers of the company. The defendant contends the latter part of the instruction was erroneous and that the officers had no right to use the cull spokes and hubs for fuel without paying their reasonable value to the corporation, and if plaintiff did so, the defendant was entitled to judgment against him for the value of the stuff used. The rule of law invoked by this assignment of error is of wide scope and subject to several qualifications. Really the evidence is not before us to determine whether or not the court's instruction was correct. The testimony as presented in the appellant's abstract is very short and the respondent has submitted no brief. It does not appear what officers of the company were in the habit of getting their fuel in the manner described, and had an understanding about the matter; or whether all the officers were directors, or whether there were any stockholders of the company except the officers. Neither is it shown how long the custom had been followed by the officers, nor whether it was known to the stockholders. These are material data in passing on the accuracy of the court's charge. It is certain that, as a general proposition, neither the executive officers nor the directors of an incorporated company have the right to convert its assets to their own use, or give them away, or make any

self-serving disposition of them against the interest of the company. [Pressed Brick Co. v. Schoenich, 65 Mo. App. 283; St. Louis Stoneware Co. v. Patridge, 8 Mo. App. 579; 3 Throop, Corp., sec. 4014.] But it is equally certain that when there are no stockholders except the directors and officers, the latter may, if they wish, give away an asset by unanimous consent, and the gift will be good unless the rights of creditors are impaired. All the stockholders of a corporation may consent to an appropriation of an asset by an official if the appropriation would not be detrimental to creditors. These are open dealings in fraud of the rights of no one concerned and consistent with the high good faith exacted of fiduciaries. [3 Thompson, Corp., sec. 4025.] It is true, too, that if the directors of the defendant company had authorized the officers to get their fuel from the cull products of the factory and this had been going on for months, as the evidence suggests, and the stockholders knew all about it and made no protest, they might be estopped to complain. [3 Thompson, Corp., sec. 4025; 5 Thompson, Corp., sec. 6531; Burgess v. R. R., 99 Mo. 496, 509, 12 S. W. 1050.] In many instances small manufacturing companies carrying on business in rural places have no stockholders except the officers; and, as said, such officers, as the only parties in interest, might make an arrangement like the one asserted in the present case and it would be valid if it did not interfere with the rights of creditors. If the officers of the defendant company, with the knowledge of every one interested, were in the habit of getting their fuel as plaintiff did, and this custom had prevailed for a long time, the fuel would be regarded, doubtless, as additional compensation to the salary received by the officers. At least, if the custom was tolerated by everybody concerned, it would afford no basis for a counterclaim in a case like this. An equity court is the forum usually asked to redress conversions of corporate assets by a corporation officer, with the consent of the directory.

This is on the theory that the act is a voidable and not a void one and hence must be set aside in equity. We have no occasion to say in this case that a court of law can never afford redress. The plaintiff, having sold his stock and resigned as president and general manager, wanted his back salary. It looks like this counterclaim for fuel may be a makeshift to defeat or offset his demand for payment, rather than a meritorious claim brought forward from a conviction that the plaintiff had wrongfully converted the company's property. Be that as it may, what we hold is that as the facts before us are so meagre that we are unable to pronounce whether, under the circumstances, the court's instruction was sound or not, and as it devolves on an appealing party to show error, we shall rule the point against the defendant. As far as there is any showing regarding the stockholders, they were all officers of the company; and, of course, if every one interested in the company allowed the officials, including plaintiff, to get their fuel from the factory's cast-off products, and acquiesced in the course, the company cannot obtain the value of the stuff plaintiff took on the theory that a tortious conversion occurred. A farmer who had hired hands to work for wages, and allowed them for months and years to supply themselves with fuel from his timber land, could as well refuse suddenly to pay the wages of his hands on the ground that they owed him for the value of the timber taken. Now and then such matters are treated as trivial by the parties, and so disregarded that it is apparent from their conduct that they thought no wrong was committed.

The judgment is affirmed. All concur.