(118 App. Div. 490)

### BOSTWICK v. YOUNG et al.

(Supreme Court, Appellate Division, Third Department. March 28, 1907.)

1. CORPORATIONS—STOCK SUBSCRIPTIONS—WHAT CONSTITUTE.

A contract for the construction and equipment of a railroad, and the acquisition of certain properties mentioned therein, provided that in consideration thereof the railroad company would issue and deliver all its bonds and an agreed amount of its stock to the contractor from time to time, as the performance of his contract should progress, in such amounts as the directors should determine to be in reasonable proportion to the progress of the work, and that upon completion of the contract the remainder of the bonds and agreed amount of stock would be delivered to the contractor. *Held*, that the contract did not constitute a subscription for the stock of the company, rendering the contractor or those for whom he acted liable for its par value.

2. SAME—ACTIONS—PLEADING—SUFFICIENCY.

In an action by the receiver of a railroad company to recover from defendants the par value of stock held by them, it was alleged that a contract for the construction and equipment of the railroad and the acquisition of certain properties mentioned therein was entered into; that it was agreed that on performance the company would deliver to him all its bonds and an agreed amount of stock; that the contract was performed, and that the directors authorized the delivery of the bonds and stock "in accordance with the pretended agreement"; that the contractor was a mere dummy contractor, and acted as such by direction of the defendants; that the contract was not actually performed by him; that

· the bonds and stock were issued to defendants through him; and that the defendants did not pay for the stock any sum whatever. *Held* insufficient to show a liability for the par value of the stock by defendants; it not appearing that any stock was issued otherwise than in payment for work or property.

3. SAME--INSOLVENT CORPORATIONS—ACTION BY RECEIVER.

A contract for the construction and equipment of a railroad and the acquisition of certain properties mentioned therein having been performed, and the bonds of the company and stock agreed upon in the contract having been delivered with the consent of all the stockholders and directors, the receiver of the company subsequently brought an action against defendants for the par value of the stock, alleging that the contract was not actually performed by the contractor, but that he was simply an intermediary put forward by defendants, to whom he had delivered the stock, without the payment by them of anything therefor. *Held*, that the liability of defendants, if any, was to the creditors of the corporation, and not to the corporation or its receiver.

· [Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 280½.]

Appeal from Special Term, Columbia County.

Action by Charles W. Bostwick, as receiver of the Albany & Hudson Railway & Power Company, against Alden M. Young and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Samuel B. Coffin (J. Rider Cady, of counsel), for appellant.
F. B. Church, for respondents.

SEWELL, J. The plaintiff, a receiver appointed in an action for the sequestration of the property of the Albany & Hudson Railway & Power Company, seeks to recover of the defendants the par value of certain stock of the company, alleged to have been fraudulently obtained by them from the company without consideration. It is somewhat difficult to determine, from the mass of conclusions set out in the complaint, what the issuable facts are that must be deemed admitted by the demurrer. Divesting the complaint of all the conclusions of law and of fact, the material facts alleged in the complaint are as follows:

The Albany & Hudson Railway & Power Company was organized and incorporated for the purpose of building, maintaining, and operating a railroad, in pursuance of the railway law (chapter 565, p. 1082, Laws 1890). The capital stock was fixed at $2,500,000, and soon after the incorporation of the company the proper officers were authorized to execute, and did execute and issue, 2,500 first-mortgage gold bonds, of the par value of $1,000 each. At a meeting of the board of directors it was unanimously resolved that the president and secretary be authorized and directed to execute a contract with one George G. Blakeslee for the construction and equipment of the road and the acquisition of the properties and rights mentioned in the contract. It was also unanimously resolved that the officers of the company be authorized and directed to deliver to said Blakeslee, or his order, all the bonds and 24,920 shares of the full-paid nonassessable capital stock of the company, in accordance with the agreement, and at a spe-

cial meeting of the stockholders, at which all were present, the minutes of this meeting of the directors were consented to and approved. It is also alleged that the contract was executed by the president and secretary of the company and by Blakeslee; that thereafter and from time to time the board of directors authorized and directed the issuance and delivery to Blakeslee of certain of the bonds, and from time to time authorized and directed the officers of the company to deliver "certain shares of the alleged full-paid nonassessable capital stock of the said company," which said bonds amounted to 2,500, and the shares of stock amounted in the aggregate to 24,920 shares. It is further alleged that Blakeslee was a mere dummy contractor and intermediary, and acted as such at the solicitation and direction of the defendants; that they caused him to execute the contract, and he signed the same at their direction; that Blakeslee never actually constructed said road, in whole or in part, and never performed any of the obligations of said contract; that the defendants caused all the stock and bonds to be issued and delivered to Blakeslee; that he did not pay for the same in cash or in property, and parted with no value therefore; that the stock and bonds were issued to defendants, through said dummy contractor, without the payment by said defendants of any sum therefor; and that the defendants did not, nor did any of them, at that time or at any time thereafter, pay for said stock the par value thereof, or any sum whatever.

It appears by the contract, which is made a part of the complaint, that Blakeslee agreed to sell, or procure to be sold and delivered to the company, all the stock of the Greenbush & Nassau Electric Railway Company, the stock of the Hudson Light & Power Company, certain real estate and water rights, and other property, and to construct and equip the road in accordance with the provisions of the contract, and that in consideration thereof the company agreed to issue and deliver the stock and bonds to the contractor from time to time as the performance of his contract should progress, in such amounts as the board of directors shall determine to be in reasonable proportion to the progress of the work, and upon completion of the agreement to issue and deliver to him all of the remainder of the 2,500 bonds and 24,920 shares of stock. It is stated in the complaint that the Greenbush & Nassau Electric Railway and the Hudson Light & Power Company were merged in the Albany & Hudson Railway & Power Company; that the railroad was completed on or before the 22d day of November, 1900, and was thereafter operated by the company; and that Blakeslee resided in Westchester county during the whole time of the construction of said road and the acquisition of the properties mentioned in the contract.

The main grounds upon which the defendants rely to sustain their demurrer are: First, that the complaint does not allege an actual subscription, or show that the defendants took upon themselves the obligations of subscribers by wrongfully appropriating the stock without paying for it; second, that, if the defendants assumed the obligations of subscribers, the complaint is defective in not setting forth a breach of the defendants' promise, or in failing to allege that the company did not receive full value for the stock and bonds by the construction

and equipment of the road; third, that the liability of the defendants, if any, is to the creditors of the corporation, and not to the corporation or its receiver.

Assuming all that can be claimed by the plaintiff from the allegations in regard to the liability of the defendants to pay the corporation or its receiver the par value of the stock held by them, the liability of the defendants, if any, rests upon contract. It depends upon a promise, express or implied. Without a promise to pay, a party cannot be charged in this class of cases. Glenn v. Garth, 133 N. Y. 42, 30 N. E. 649, 31 N. E. 344. It is not alleged in the complaint that any express promise was made by or in behalf of the defendants, except to build the road and perform the other conditions of the contract, for the stock and bonds therein agreed to be delivered. Every fact and circumstance alleged show that there was no agreement to take stock and bonds otherwise than as a payment for work and property. The agreement, on the part of the contractor, was not to pay the par value of the stock in cash. It was not to purchase the stock and bonds and pay for them in work and property; but it was to accept full-paid stock and bonds in payment for the building of the road. That was the only contract ever made by the defendants which has any bearing on the present issue. According to its language, the issue and delivery of the stock and bonds were made to depend upon the construction of the road, and the contractor had no claim to the stock, further than it was earned, and did not become a stockholder until it was earned and received in payment.

If the signing of the contract imported that the contractor subscribed for the shares mentioned therein, if this be the true construction of the act of the contractor in entering into the contract, no agreement can be made to build a railroad by the transfer of stock and bonds to the contractor, without rendering him and the people for whom he may act liable for the par value thereof. In Van Cott v. Van Brunt, 82 N. Y. 535, the court said such a rule would seriously interfere with the construction of enterprises of this description, and would prevent the building of many railroads. "We are unable to discover any reason why stock and bonds may not be transferred to a contractor to pay for building a railroad, where the contract is made in good faith and with no fraudulent intent." We think that this agreement does not fall within the case of an ordinary stock subscription, and that the action cannot be maintained unless it appears that the defendants assumed the obligations or liabilities of subscribers by wrongfully accepting and appropriating the stock without paying for it, so that an implied contract or promise is made out.

The conclusion is stated in the complaint that the contract was the culmination of a fraudulent scheme or conspiracy on the part of the defendants to acquire the stock without paying therefor; but the allegations in that respect wholly fail to support the conclusion. It appears that the corporation was formed for a legal purpose, and that the contract was one the company had power to make and that the stock was issued and delivered as full-paid stock with the approval and consent of all the directors and stockholders. There is no claim that the cost of constructing the road and the value of the properties

acquired were less than the par value of the stock and bonds delivered, and, for aught shown to the contrary, the company, by entering into the contract, put itself in position to get par value for the stock and the market value of its bonds. There is no fact alleged showing, or tending to show, that the corporation did not actually receive all that was agreed to be done by the contractor in return for the stock and bonds, or that a share of stock was issued otherwise than in payment for work or property. On the contrary, it is expressly stated in the complaint that the road was completed and the properties mentioned in the contract were acquired, and that the directors authorized the issuance and delivery of the stock and bonds "in accordance with the pretended agreement."

In view of these statements, it is not enough, to show a right of action against the defendants, to allege that Blakeslee never actually constructed the road or performed the conditions of the contract, or that the defendants did not pay for the stock when it was delivered to them or at any time theretofore. The plaintiff is bound to go further, and allege in unequivocal terms that the stock was not issued or delivered by the company in payment for the construction of its road and the property acquired, or some other fact from which it may be inferred that the company did not receive the full or par value, for the stock delivered to the defendants. In the absence of a definite allegation to that effect, the natural and necessary conclusion from the facts and circumstances alleged is that the defendants built the road and took the stock and bonds in payment therefor, and not that the stock and bonds were delivered in violation of the statute. This is a case when the failure to deny a fact furnishes satisfactory evidence of it. "Acts done by a corporation, which presuppose the existence of other acts to make them legally operative, are presumptive proof of the latter." Pringle v. Woolworth, 90 N. Y. 510; Nichols v. Mase, 94 N. Y. 160; Demings v. Sup. Lodge K. of P., 131 N. Y. 522, 30 N. E. 572. "Illegality is never presumed. On the contrary, everything must be presumed to have been legally done, until the contrary is proved." Nelson v. Eaton, 26 N. Y. 415; Beardsley v. Johnson, 121 N. Y. 224, 24 N. E. 380. Upon the facts alleged it is very plain that there was no agreement, express or implied, on the part of the defendants to pay the par value of the stock in cash. Every fact and circumstance alleged shows that such an agreement was contrary to the intention of the parties, and that a recovery herein would not be upon an existing contractual relation, but in hostility to an express agreement between the corporation and the defendants.

The only point remaining to be considered is whether the facts alleged constitute a cause of action in favor of the plaintiff. There can be no doubt that the appointment of the receiver did not vest in him a right which was personal to the creditors, or enable him to recover under circumstances in which the corporation could not have maintained an action. It is equally clear that the corporation itself would have no standing to demand that the defendants should pay the par value of stock issued to them as full paid-up stock, pursuant to an agreement which, as between the corporation and the defendants, was valid and binding. Thompson v. Knight, 74 App. Div. 317, 77 N. Y.

Supp. 599; Woodruff v. Erie R. R. Co., 93 N. Y. 609; Christensen
v. Eno, 106 N. Y. 97, 12 N. E. 648, 60 Am. Rep. 429. If we assume
that the contract was voidable, because of a scheme to obtain the stock
without paying for it, and that there was fraud and collusion in pro-
moting the company, in evading a direct contract, and in causing the
stock and bonds to be issued and delivered, neither the corporation
or its receiver is in position to complain, or to assert any right against
the defendants; for it clearly appears that it was all done with the
consent and co-operation of all the officers, directors, and stockholders,
and that no other persons were concerned or interested in the cor-
poration. Little v. Garabrant, 90 Hun, 404, 35 N. Y. Supp. 689;
Barr et al. v. N. Y., L. E. & W. R. R. Co., 125 N. Y. 263, 26 N. E.
145; Seymour v. Spring Forest Cem. Ass'n, 144 N. Y. 341, 39 N. E.
365, 26 L. R. A. 859.

Fraud may furnish sufficient ground for rescinding a contract, or
for an action by a creditor upon the statutory obligation; but it can-
not be availed of as a means of recovery by a party to the scheme.
The doctrine of equitable estoppel applies. Kent v. Quicksilver Min-
ing Co., 78 N. Y. 159; Belden v. Burke, 147 N. Y. 558, 42 N. E. 261;
Bath Gaslight Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390, 36 L. R. A.
664.

It follows that the judgment of the Special Term should be affirmed,
with costs. All concur; COCHRANE, J., in result.