222 S. W. 579; Guyon v. State, 89 Tex. Cr. R. 292, 230 S. W. 408; Owens v. State, 28 Tex. App. 123, 12 S. W. 506; Pate v. State, 91 Tex. Cr. R. 474, 239 S. W. 967.

Bill No. 4, presenting this matter, is qualified to show that at least an issue was present regarding this, and the court recognized such in his main charge. In view of the disposition we make of this case, we desire to say that we think the special charge asked by appellant, in substance, to the effect that, if possession and ownership were believed by the jury to be in O'Keefe and Parrish only, to acquit, should have been given, in lieu of the negative presentation of this matter as contained in the court's charge.

The claim is made by appellant that the only positive evidence of identification of appellant was given by one Miss Potts, who was in the bank at the time of the robbery. On redirect examination she was permitted to testify over objection that she had looked through and examined some 200 or more pictures which were shown to her by officers, and that, in addition thereto, she examined two pictures of appellant exhibited by said officers, and identified appellant's picture as being one of the men who robbed the bank and whom she saw leaving the bank and entering an automobile. This seems to have been admitted upon the theory that on cross-examination a predicate was laid to impeach her on the question of identity, and that her testimony was under attack on cross-examination. Reference is made by the court in his qualification of the bill presenting this matter to pages 46–47 of the statement of facts to substantiate this theory. It is the well-settled rule in Texas that, if it has been shown that a witness has made out of court statements contradictory to those testified to on the trial, it is then permissible to prove that such witness has made other statements out of court which are consistent with and confirmatory of his testimony on the trial. Gallaher v. State, 28 Tex. App. 247, 12 S. W. 1087; Taylor v. State, 87 Tex. Cr. R. 330, 221 S. W. 611; Branch's P. C. p. 112. However, unless it appears that a witness has been impeached by proof of statements contradictory to those given by him in evidence, a consistent and confirmatory statement made to a third party out of the presence of appellant is hearsay and inadmissible. Holmes v. State, 52 Tex. Cr. R. 352, 106 S. W. 1160; Pridemore v. State, 53 Tex. Cr. R. 623, 111 S. W. 155; Pryor v. State, 40 Tex. Cr. R. 643, 51 S. W. 375. In the instant case the witness was vigorously cross-examined in an effort to show she was mistaken as to her identity, but no statements contradictory to those testified to by her had been introduced. The pages of the statement of facts referred to fail to show the existence of facts which would make the aforesaid testimony admissible. That she was able to select appellant's picture from a large number of others and identify him as the robber to officers in the appellant's absence may have been regarded by the jury as of great probative force. It was clearly hearsay, unless it was rendered admissible under the terms of the rule above stated. In some jurisdictions a statement of the character in question does not seem to be admissible under any circumstances. The rule, however, is otherwise in Texas, but we do not feel justified in extending it beyond its present limitations. We think the court's action in this matter was error under the authorities cited.

Vigorous contention is made of the action of the district attorney in persistently asking the appellant questions with reference to an alleged hijacking case. As this question is not likely to occur again, we content ourselves merely with directing the trial court's attention to the case of Rosa v. State, 86 Tex. Cr. R. 646, 218 S. W. 1056, where the rule upon this subject is announced.

We pretermit discussion of questions not likely to again occur.

Reversed and remanded.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

## HALL v. CRAWFORD & DELPHENIS.
### (No. 3592.)

Court of Civil Appeals of Texas. Texarkana
Nov. 29, 1928.

Rehearing Denied Dec. 6, 1928.

the appellees under the doctrine of resulting trusts, and that the court erred in holding otherwise, because the facts found by the court conclusively established misapplication of the corporation's funds by an officer thereof, and that the appellees acquired such funds as transferees with notice. Every case of this character of misapplication must be decided in the light of its individual status and peculiar incidents. It appears that Carter Anderson, for the ordinary bills he personally owed, customarily gave monthly a check of the corporation, not to himself, but directly to his creditor. The giving of corporation checks direct to his creditors was in pursuance of a business method used by him as active president managing the business, in drawing his monthly salary. The check so issued was by him charged against his account on the book of the corporation. His salary as and when due was then regularly credited to his account. At most times, however, his account on the book was in a sum exceeding his salary, and the salary when credited did not satisfy the account in full. This practice continued from the date of the entry of the corporation in business to date of assignment, a period of time of nearly three years. In such facts the method pursued monthly by Carter Anderson, of giving corporation checks, not to himself, but directly to his own creditors, may properly be regarded as merely an indirect way of paying himself his salary due, in so far as such checks represented an amount equal to and not exceeding his monthly salary payable. He was the active manager of the business, and as such had the authority to pay himself his salary. The act of misappropriation of corporate funds must rest upon the precise fact that Carter Anderson, in paying his personal debts, gave corporation checks monthly to his creditors in a sum greater than his salary, and his account on the book became and remained overdrawn.

It is believed, in the special circumstances, that the trial court did not err in denying judgment in favor of appellant as representative of the corporation, its stockholders, or the present creditors. This is so as to the corporation and its stockholders, because of the factual element, as found by the trial court, of ratification by timely acquiescence in the custom of the president and active spirit and manager of the business in drawing checks directly upon the corporate funds for his ordinary private purposes. There being no positive fraud shown in so doing, equitable estoppel arises, as between them and third persons, from claiming that in overdrawing the account the officer was wrongfully misappropriating corporate funds. Jorndt v. Reuter Hub & Spoke Co., 112 Mo. App. 341, 87 S. W. 29. The assignee, as their representative, has no greater rights than the corporation or its stockholders. It is clear

W. A. Hutchison, of Paris, for appellant.
Beauchamp & Lawrence, of Paris, for appellees.

LEVY, J. (after stating the facts as above). The appellant relies upon the point in view, in effect, that as assignee he was entitled to restitution of the payments made to

that the transactions in evidence were the subject-matter of ratification. 3 Thompson Corp. (Ed. 1895) § 4025; Ibid, vol. 5, § 6531; 14a C. J. pp. 377 and 401; Little v. Garabrant, 90 Hun, 404, 35 N. Y. S. 689. And ratification ordinarily becames a question of fact. Ft. Worth Nat. Bank v. Harwood (Tex. Com. App.) 229 S. W. 487.

■ Carter Anderson was, and was known to be, the sole owner of practically all the stock of the corporation, and sole real acting controller and manager of its affairs, with full control and direction of the business. As clearly demonstrated by the facts, there was no embezzlement or secret withdrawal of the corporation funds. There was no effort made to intentionally defraud the corporation. Neither does it appear that the withdrawal of the funds for his private purposes operated to be in fraud of other persons interested in the corporation. Carter Anderson owned practically all of the stock, and his wife and Mr. Holloman were only nominal shareholders by gift of the shares to them. And it is admittedly shown that the withdrawal of the funds did not bring about or influence insolvency of the corporation. The failure of the assets to sell for enough to entirely satisfy the corporation debts is attributed to a state of affairs particularly existing at date of assignment. There is no evidence that the two nominal stockholders did not know of the method and mode of Carter Anderson of drawing the checks and to the extent drawn. They had full opportunity to know of such method, and a real duty to speak of it and object, but remained inactive and abstained from objecting. The evidence sufficiently established acquiescence and ratification, and the trial court was authorized to so find. The six checks in evidence were given on dates ranging respectively from April, 1924, to November, 1925. Considering all the circumstances apparently known to the appellees, they could have reasonably assumed that authority existed in Carter Anderson to give the checks, and that he was not in fact doing an unauthorized act amounting to wrongful misappropriation of corporation funds. As involved in the court's conclusion, the appellees would be injured if the corporation, and its stockholders, in the circumstances, were not held to the attitude on which the estoppel pleaded is based.

■ Second. Did the present creditors have such rights to the payments sued for, independent of the stockholders, as would sustain this action in their behalf as against appellees? If so, the liability must rest upon the prohibited transfer of the property of an insolvent debtor to hinder, delay, and defraud his creditors. Logeman Mfg. Co. v. Logeman (Mo. App.) 298 S. W. 1040. Such acts only impair rights of creditors. It does not appear that the present creditors were corporation creditors at the time the checks were given. And even though they were, the evidence is conclusive that at the times of the respective transactions in evidence the corporation had ample assets to pay existing obligations, and continued solvent for some months afterwards. The withdrawal of such particular funds by the president and manager, either of the $372 in suit or the entire amount of the overdrawn account, did not, as found by the court, in any wise cause or influence default in the payment of debts or the exigency causing the corporation to suspend business by means of the execution of the deed of assignment. Consequently the acquiescence or assent of the sole stockholders and officers to the withdrawal of the funds in suit did not in fact operate to impair rights of creditors.

The present suit is quite similar to the cases of Watts v. Gordon, 127 Tenn. 96, 153 S. W. 483; Sweet v. Lang (C. C. A.) 14 F.(2d) 762; Little v. Garabrant, 90 Hun, 404, 35 N. Y. S. 689. The cases cited by appellant are applicable to a different situation than in the instant case, and are therefore not in point here.

The judgment is affirmed.

#### On Rehearing.

The original opinion, it is perceived, denied the appellant, as representative of the creditors, the right of recovery in the facts upon the ground that the withdrawal of the funds by Carter Anderson "did not operate to impair rights of creditors." The ruling was influenced by the factual elements, namely: (1) The withdrawal of the funds did not "in anywise cause or influence insolvency"; (2) "insolvency did not cause the execution of the deed of assignment"; and (3) "the failure of the assets to sell for enough to satisfy the corporation debts is attributed to a state of affairs particularly arising at date of assignment," and not on account of the fact of withdrawal of the particular funds by the manager. If the factual elements had appeared differently, the appellant's contention would prevail.

The motion is overruled.