## CHARLESWORTH v. HIPSH, Inc.*
### No. 10554.

Circuit Court of Appeals, Eighth Circuit.
July 20, 1936.

Harry L. Jacobs, of Kansas City, Mo. (I. J. Ringolsky and Wm. G. Boatright, both of Kansas City, Mo., on the brief), for appellant.

*Rehearing denied Aug. 24, 1936.

Frank P. Barker, of Kansas City, Mo. (Winger, Reeder, Barker & Hazard and Richard P. Brous, all of Kansas City, Mo., on the brief), for appellee.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is a plenary suit in equity by the trustee in bankruptcy of the estate of Baltimore Shirt Company, bankrupt, to recover two payments made to the appellee, defendant below, Hipsh, Inc. Recovery is sought on the ground of fraudulent conveyance under section 67e of the Bankruptcy Act (11 U.S.C.A. § 107(e), pp. 137, 138), and 70e of the act (11 U.S.C.A. § 110(e), pp. 277, 278), and as preferences prohibited under section 60b of the act (11 U.S.C.A. § 96(b), p. 336).

The Baltimore Shirt Company was adjudicated a bankrupt on February 11, 1932. The first payment which it is sought to recover was made by the bankrupt to Hipsh, Inc., by check dated January 8, 1932, for $2,001.38; and the second by W. E. Davis Company, by check of the same date for $1,827.68.

The trial court found that the payments in question were neither fraudulent nor preferential, and dismissed the petition.

The defendant, Hipsh, Inc., was a necktie manufacturer in Kansas City, Mo. The bankrupt, Baltimore Shirt Company, prior to 1932, owned and operated a line of haberdashery stores in Kansas City and St. Louis. It bought merchandise on credit from the defendant. W. E. Davis was its president and manager. Some time before April, 1931, Davis and the bankrupt purchased the capital stock of Wilson Brothers Store for Men in Kansas City. All of the capital stock of the corporation, except two qualifying shares, were transferred to Davis. $2,500 of the purchase price was advanced by the bankrupt, and notes signed by the bankrupt and Davis were given for the balance. Davis managed the business of the new company, and out of the proceeds of its business paid the bankrupt the $2,500 advanced by it and the notes given as a part of the purchase price. The name of the corporation was changed to W. E. Davis Company. It handled a higher priced class of merchandise than did the bankrupt, but of the same general nature. It also purchased merchandise of the defendant on a credit basis. In June, 1931, the W. E. Davis Company established haberdashery departments in the Katz Drug Company stores in both Kansas City, Mo., and Kansas City, Kan., paying the drug company as rental a percentage of the receipts from sales.

The bankrupt made no claim to the capital stock of the W. E. Davis Company and did not list it as an asset in its schedules in bankruptcy. On application of the trustee, however, the Davis Company's assets were surrendered to him and administered as a part of the bankrupt estate, as an agency or department of the Baltimore Shirt Company.

In 1931 and 1932, the bankrupt found itself in financial difficulty because of reduced profits and the high rentals reserved in its leases. In January, 1932, both the bankrupt and the Davis Company were indebted to the defendant in the amount of the respective payments referred to above.

On January 8, 1932, Carl Hipsh, who until four days before had been an officer and stockholder of Hipsh, Inc., purchased of Davis the haberdashery departments in four of the Katz Drug Company stores, three in Missouri, and one in Kansas. The purchase price was $5,910; $4,000 of which was for merchandise and $1,910 for fixtures. This amount was paid by three checks; one for $4,000, one for $1,410, and one for $500, all payable to W. E. Davis Company. The two larger checks were deposited in the bank account of the company, and the one for $500 was taken by Davis with the knowledge of Carl Hipsh.

On the same day that Carl Hipsh paid the Davis Company the purchase price of the merchandise and fixtures in the Katz Drug Company Stores, the Davis Company issued two checks, one to Hipsh, Inc., for $1,827.68 in payment of the balance due on its account, and one for $2,001.38 to the bankrupt. At the same time the bankrupt issued a check for a like amount to Hipsh, Inc., in payment of the balance of its account. At that time the bankrupt was not in debt to the Davis Company, but it repaid the amount prior to the adjudication in bankruptcy.

The appellant first contends that both payments to Hipsh, Inc., were fraudulent (a) because made as a result of a sale of corporate assets wherein $500 of the purchase price went to Davis, president and agent of the Davis Company, instead of to the corporation; and (b) because such payments were derived from the proceeds of a

sale made in violation of the bulk sales laws of both Missouri and Kansas.

The contention of the appellant with respect to the $500 check taken by Davis personally from the sale price of the four stores with the knowledge of Carl Hipsh, the vendee, is that it constituted a violation of 67e of the Bankruptcy Act (11 U.S. C.A. § 107(e). The part of the act relied upon provides that all transfers of his property made by a bankrupt within four months prior to the filing of the petition "with the intent and purpose on his part to hinder, delay, or defraud, his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration."

The claim of the appellant on this point involves both a finding of fact and an application of the law. The factual basis is condensed in a requested finding that W. E. Davis, who acted as agent of the corporate vendor in making the transfer of the Katz Stores, was its president, director, and general manager; that he was also the president, director, and general manager of the bankrupt, Baltimore Shirt Company, and that he was a trustee for both corporations; that he demanded and accepted $500 from the transferee as a personal payment to himself; that the payment was made and received to induce him to make the sale and transfer; that it was made with the full knowledge of the defendant.

The trial court refused to make the requested finding of fact, and in so doing we think he is supported by the testimony. The check for $500 in question was drawn payable to the corporation and not to Davis personally. The evidence contradicts instead of supporting the contention that it was given or received as an inducement to make the sale. It should be observed in this connection that it is not contended that the sale was made for less than the fair value of the stores. The defendant was not the vendee, and at that time the testimony shows that the defendant dealt with the two corporations as entirely separate entities without any reason to believe that the one was only a bureau, agency, or department of the other. At that time the Davis Company was undoubtedly solvent; its stock was all owned by Davis, so that no creditor or stockholder was prejudiced by the act of Davis. Neither was there any concealment of the transaction, and there is no evidence of any intention to defraud subsequent creditors. In re American Range & Foundry Co. (D.C.Minn.) 22 F. (2d) 558, 559; Parrott v. Noel (D.C.Va.) 8 F.(2d) 368, 371; Jorndt v. Reuter Hub & Spoke Co., 112 Mo.App. 341, 87 S.W. 29. To constitute a conveyance voidable under the provisions of 67e, actual intent on the part of the debtor to hinder, delay, or defraud creditors must be shown, and that requirement is not satisfied by a showing that in the light of subsequent events an actual preference may have been effected by the payment in question. Coder v. Arts, 213 U.S. 223, 241, 29 S.Ct. 436, 53 L.Ed. 772, 16 Ann.Cas. 1008; Irving Trust Co. v. Chase National Bank (C.C.A.2) 65 F. (2d) 409, 410. To find such fraudulent intent in this instance requires proof that at the time of the sale not only was the

W. E. Davis Company a mere agency or department of the Baltimore Shirt Company, but also that Carl Hipsh was acting for the defendant and not for himself in the purchase of the stores. The evidence does not sustain these inferences. However justified the appellant may be by the circumstances in entertaining a suspicion of such a situation, strong enough no doubt to warrant bringing this suit, it must be held that his claim is not supported by the evidence, and the defendant cannot be convicted upon suspicion based upon unsupported inferences.

The appellant also contends that he is entitled to recover the payments, or at least the payment made by the Baltimore Shirt Company, because such payments were derived from the proceeds of a sale made in violation of the bulk sales laws of the states of Missouri and Kansas. The statutes of both states are similar, in that they declare that the sale of the whole or a part of a stock of merchandise, otherwise than in the ordinary course of trade, shall be void as against the creditors of the seller, and that the vendee shall be held to be a trustee for the benefit of such creditors; and section 67e of the Bankruptcy Act (11 U.S. C.A. § 107(e) also provides that all transfers of his property "made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the State, Territory, or District in which such property is situate, shall be deemed null and void * * * and such property shall pass to the assignee and be

by him reclaimed and recovered for the benefit of the creditors of the bankrupt."

It should be noted that this suit is not for the recovery from the vendee of a stock of merchandise, but for a payment alleged to have been made out of the proceeds of such sale to a bona fide creditor of the bankrupt vendor. We are not here considering such payment as an unlawful preference, but as a fraudulent conveyance.

We find nothing in the bulk sales laws of either state nor in the bankruptcy laws that will warrant such recovery under the testimony in this case.

■ The bulk sales laws, being in derogation of the common law, are to be construed strictly. Balter v. Crum, 199 Mo. App. 380, 203 S.W. 506. They apply to the property transferred and to the vendee, and to no one else. They make no reference to a creditor paid out of the proceeds of the sale. It is true that plaintiff argues that the defendant is the real vendee, but the testimony not only does not support the assertion, but contradicts it. The payment here is not, therefore, a transfer which is held null and void by the laws of the state where the property is situate. Consequently, section 67e of the act is not applicable.

■ Further, in so far as the sale of the stores in Missouri is involved, all right of action had expired before this suit was begun. The Missouri law (section 3131, R.S. Mo.1929 [Mo.St.Ann. § 3131, p. 1971]) provides that: "No proceeding at law or in equity shall be brought against any vendee to invalidate any sale or transfer of property contemplated by this article after the expiration of ninety days from the date of delivery of such property to any such vendee." The sale in this instance was made on January 8, 1932, and this suit was not commenced until June 16, 1932, more than 90 days thereafter. Counsel discuss this situation as if the 90-day period were a provision found in an ordinary statute of limitation, and contend that it was tolled by the order of the bankrupt court directing the trustee to take charge of the Davis Company's assets on February 24, 1932. In this view they are in error. Here the right and the remedy are both created by the bulk sales law. The limitation of the remedy is a limitation of the right as well as of the liability. Time is made by the law of the essence of the right. When, therefore, the 90-day period

expired the rights of creditors against the vendee likewise expired. Time in which the trustee may sue cannot be extended by a provision in the Bankruptcy Act which purports only to limit the time within which a suit may be brought by or against him. Bankruptcy Act, § 11d, 11 U.S.C.A. § 29(d); Ford, Bacon & Davis, Inc., v. Volentine (C. C.A.5) 64 F.(2d) 800, 802; The Harrisburg, 119 U.S. 199, 214, 7 S.Ct. 140, 30 L. Ed. 358; Western Fuel Co. v. Garcia, 257 U.S. 233, 242, 42 S.Ct. 89, 66 L.Ed. 210; Dennis v. Atlantic Coast Line R. R., 70 S.C. 254, 49 S.E. 869, 106 Am.St.Rep. 746.

■ The final contention of appellant is that he is entitled to recover the payments in question on the ground that they were voidable preferences under section 60b of the Bankruptcy Act (11 U.S.C.A. § 96(b). Upon this question the burden was upon the plaintiff to prove (1) that the bankrupt was insolvent at the time the payments were made, and (2) that the defendant, at the same time, had reasonable cause to believe that the enforcement of payment would effect a preference. First National Bank of Lake Benton v. Galbraith (C.C.A.8) 271 F. 687; Pyle v. Texas Transport & Terminal Co., 238 U.S. 90, 98, 35 S. Ct. 677, 59 L.Ed. 1215. Even the fact, if it be a fact, that the creditor may have reason to suspect that the transfer will effect a preference is not equivalent to a reasonable belief that the transfer will have that effect. Grant v. First National Bank, 97 U.S. 80, 81, 24 L.Ed. 971; Nichols v. Elken (C.C.A.8) 225 F. 689, 691. And the fact that the creditor may know the debtor to be insolvent at the time of the transfer will not create a preference within the meaning of the statute unless the creditor also has reasonable ground to believe that the transfer will have such effect. Kennard v. Behrer (D.C.S.D.N.Y.) 270 F. 661, 664; Everett v. Warfield Mining Co. (C.C. A.4) 37 F.(2d) 328, 330.

The trial court found that both the Baltimore Shirt Company and the Davis Company were solvent on the date of the payments, January 8, 1932. He also found that the defendant had no reasonable ground to believe that either company was insolvent at that time. There is substantial evidence in the record to support these findings. There were several circumstances which would justify suspicions to the contrary, but the testimony is direct and positive in support of the court's findings. According to the undisputed testimony, the

only information which the defendant had with respect to the financial responsibility of the bankrupt was a report of R. G. Dun & Co., a mercantile agency, made on December 4, 1931, which showed the bankrupt not only solvent, but worthy of further credit. The defendant's attitude of mind is shown, also, by the fact that as late as February 8, 1932, it accepted and approved an order from the bankrupt for credit for $240 worth of neckties and had "the biggest part of them" made up for delivery when the adjudication in bankruptcy occurred.

What has been said is sufficient to dispose of the question of an unlawful preference, but appellant makes a further contention meriting consideration. He claims that since the defendant was one of the creditors that signed the petition in bankruptcy against the Baltimore Shirt Company, it is bound by the adjudication of insolvency. In connection with this claim it is also urged that an order entered on February 24, 1932, authorizing the plaintiff to take possession of the property of the W. E. Davis Company and to administer it as a part of the bankrupt estate on the theory that the Davis Company was but a bureau or agency of the Shirt Company, adjudicates the unity of the two corporations as against the defendant. Assuming these conclusions, it is contended that the assets and liabilities of the two corporations when added prove the insolvency of both of them, rendering the original adjudication of bankruptcy res adjudicata on the issue of insolvency in each case.

The argument so advanced is more specious than sound. That the adjudication is binding upon the defendant so far as the Baltimore Shirt Company is concerned as of February 11, 1932, the date on which the petition was filed, is true; but the establishment of insolvency on that date does not relate back to January 8, 1932, the date on which the payments were made. Neither is the order of February 24, 1932, an adjudication as to the unity of the two corporations against the defendant. That was a summary order entered without a hearing, without notice to the defendant, and upon consent of the Davis Company alone. Orders in bankruptcy upon purely collateral matters not brought in issue by the petition and answer are not binding upon petitioning creditors, nor upon any creditor not a party to the proceeding.

Remington on Bankruptcy, § 530, and cases therein cited; Gratiot County State Bank v. Johnson, 249 U.S. 246, 249, 39 S.Ct. 263, 63 L.Ed. 587. Neither the adjudication nor the order of February 24th can estop the defendant from denying the insolvency of both corporations as separate entities as of January 8, 1932.

For the reasons stated, the judgment appealed from is affirmed.